## FORT WORTH & D. C. RY. CO. v. GARRETT.

### No. 12272.

Court of Civil Appeals of Texas. Fort Worth.
Feb. 15, 1930.

Rehearing Denied March 22, 1930.

Carrigan, Britain, Morgan & King, of Wichita Falls, and Thompson & Barwise, of Fort Worth, for appellant.

Penix & Penix, of Wichita Falls, for appellee.

BUCK, J.

Mrs. Hattie L. Garrett sued the Fort Worth & Denver City Railway Company on account of the death of her husband, Wm. W. Garrett. She alleged: That the deceased was an employee of the defendant at the time of his death, as a special agent, and among his duties he was charged with the obligation to protect the property of defendant, to keep the same from being stolen, and to prevent persons and property from being injured by defendant, its trains, locomotives, etc. That on or about September 10, 1927, Sells-Floto Circus was exhibiting in Wichita Falls just east of the baseball park. That there was a street crossing of the railway tracks on Seventh street, and said crossing was some three or four blocks from the east end of Seventh street. That Seventh street is one of the main paved thoroughfares from the business and residence section of the city of Wichita Falls to the ball park. That there were many thousands of people in attendance at the performance of the circus, and that the circus ended about 11 o'clock that night. In order to load the cages and other property of the circus, the defendant permitted Seventh street to be closed, and placed at the crossing a number of cars on which the circus property was to be loaded. That the deceased was directed by the railway company to help direct the traffic off of Seventh street and onto Lee street, going in a westerly direction from said circus. That while he was so engaged an automobile driven by some person whose name is unknown to plaintiff struck the deceased and dragged him for some distance, and on account of such injury he died September 12, 1927. That the defendant was negligent, and such negligence was the proximate cause of the death of the deceased, in the following respects:

(1) In placing and parking its cars on and across said Seventh street for the purpose of being loaded with the property and equipment of said circus; (2) in operating its trains and engines over its said track at said time and place, and especially on account of the great throng of people, automobiles, and other vehicles there on said street; (3) that defendant was negligent in placing its cars to be loaded with the property and equipment of said circus in a position to blockade said Seventh street and to require said deceased while in line of duty and within the scope of his employment to be stationed in Seventh street and on the west side of Lee street for the purpose of diverting the great throng of people from passing along Seventh street from said circus to their homes and places of business; (4) that said defendant was negligent in failing to provide a chain or rope to be used across Seventh street and along the west side of Lee street and in this manner prevent the travel west along Seventh street until after it had passed the cars, engines, and trains of defendant; (5) that defendant was negligent in failing to furnish sufficient help to assist said Wm. W. Garrett, deceased, in turning and diverting the travel and traffic as it was then moving from Seventh street along Lee street; (6) that defendant was negligent in failing to furnish the deceased with a safe place in which to perform his duties and the duties required of him, in that defendant furnished an unsafe place on account of the enormous amount of traffic and travel along Seventh street at the time and under the circumstances and at the west side of Lee street during the clos-

ing hours and after the close of said circus, which many thousands of people attended and for most of whom Seventh street was the direct thoroughfare.

The cause was tried before a jury upon special issues. The jury found: (1) That defendant was negligent in blockading Seventh street in the city of Wichita Falls on the occasion in question. (2) That such negligence was a proximate cause of the injury and death of said Wm. W. Garrett. (3) That the defendant directed that traffic on the occasion in question be diverted from Seventh street on to Lee street. (4) That such direction did not constitute negligence. (5) That it was unsafe and dangerous for Wm. W. Garrett to divert traffic from Seventh street to Lee street at the time and place of his injury. (6) That defendant was not negligent in causing Wm. W. Garrett to divert traffic at the time and place of his injury. (7) The court submitted this issue: "If in answer to any of the preceding issues you have found that the defendant was negligent, then answer: Did such negligence concur with the acts of the driver of the automobile in producing the injuries of the said W. W. Garrett at the time and place in question?" To which the jury answered: "Yes." (8) That the negligent act of defendant and the acts of the driver of the automobile constituted the proximate cause of the injury and death of said Garrett. (9) That said Garrett was not guilty of contributory negligence in the manner and way in which he was diverting the traffic at the time of the injury mentioned. (10) That said Garrett was not guilty of negligence in continuing in the service of defendant at such time and place in view of the risks, dangers, and hazards connected with the performance of such duties. (11) That $7,500 would be required to reasonably compensate the plaintiff for the damages sustained by her on account of the death of her husband.

Upon this verdict the court rendered judgment for the plaintiff and against the defendant for $7,500 with interest. From this judgment the defendant has appealed.

### Opinion.

We are of the opinion that the plaintiff did not make out a case of liability against the defendant by her pleadings. Nor do we think that the evidence in the case is sufficient to support the judgment rendered. The evidence shows that it was the custom, when circuses were exhibiting in the city of Wichita Falls, for the chief of police, under the direction of the city commission, to order Seventh street closed while the circus was unloading and reloading. The captain of the traffic department and the chief of police both testified that in their judgment it was necessary, or reasonably necessary, to have handled the crowd that night as it was han-

dled. The evidence shows that the chief of police had directed that Seventh street should be closed for the reloading of the circus property after the show; that he had the authority of the city commission to close it. W. J. Tucker, connected with the police department, was working alongside Wm. W. Garrett on the night in question. He and Garrett were directing the traffic down Lee street. There was a heavy traffic along Seventh street and up the west side of Lee street. According to the custom of the police officers, they directed and restrained the traffic by standing out in the street.

J. I. Williams was working with the deceased when he was hit by the car. He testified: That it was about 12 o'clock when Garrett was run over by the car and was killed. That the traffic had been pretty heavy up until this time but had lightened up some. That he and Garrett were standing on the curb when a young man came along driving his car pretty fast, and Garrett got up and started to get in front of him. That the boy was in a five-passenger Ford car; no one with him. That he was going west from the ball park. That the witness was some five or six feet ahead of Garrett when the boy was coming right up Seventh street from the east. That Garrett tried to stop him, he had his flash-light in his hand and flashed it, and there was also an electric light there, but the driver apparently did not pay any attention to him. Then Garrett tried to jump out of the way of the car, and the boy turned suddenly toward the sidewalk and hit Garrett, dragging him some distance. Garrett was taken to the hospital and, as before stated, died on September 12th. The boy was apparently about 17 years of age and was arrested and taken to jail but was released a few days later.

In City of Vernon v. Lisman, 17 S.W.(2d) 769, 770, by the Commission of Appeals, approved by the Supreme Court, the city of Vernon had permitted a sewer ditch to be excavated on one of its streets and left unguarded. As H. M. Lisman, in company with two other persons, was riding along said street, the wheels of the automobile sank into the loose mud and bogged down. Lisman, who was not driving, got out of the car and attempted to help move it. He was struck by a passing automobile and killed. The Commission of Appeals, in holding that the condition of the street was not the proximate cause of his death, said:

"It is apparent the death of deceased was not proximately caused by the negligence of defendant city, but was due to an efficient intervening cause; that is, the act of being struck by a passing automobile.

"It is, of course, elementary that an act of negligence need not be the sole proximate cause of injury to create liability; it is suf-

ficient if such negligence concurs or contributes with another's act whether that other's act be negligence or not, and such is the doctrine of Gonzales v. City of Galveston, 84 Tex. 3, 19 S. W. 284, 31 Am. St. Rep. 17, and the other cases cited by the Court of Civil Appeals; but here the negligence of the city did not, to any extent, proximately cause the death. It was at most only the occasion for deceased's presence in the street. The universal test of the legal conception of proximate cause, plainly stated, is whether or not the wrongdoer could reasonably have anticipated that such a consequence would follow. The whole question is thoroughly discussed in Texas & Pac. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162, which has long been considered as the last word on 'proximate cause.' By analogy the case of Fort Worth & R. G. Ry. Co. v. Neely (Tex. Civ. App.) 60 S. W. 282, is in point. There the railroad company negligently maintained a mudhole in a public street in Granbury. Charles Neely was thrown from the buggy in which he was riding because his horse became frightened at escaping steam from a passing engine and ran into the mudhole. It was there held that the negligence with respect to the mudhole was but passive and was not the proximate cause of Neely's injury and death. The fright of the animal and his running away was held to have been an efficient intervening cause of the accident. So here the act of the driver of the passing automobile in striking Lisman was itself an efficient intervening cause of his death, whether such act was negligence or not. It adds nothing to plaintiff's case that the accident would not have happened but for the negligence of the city in maintaining the mudhole. That was true in the Neely Case. This does not make such act a proximate cause of the subsequent injury. It would be purely speculative to hold that the city ought, under such circumstances, to anticipate not only that an automobile might become stalled in the mudhole and that its driver or occupant would get out into the street and make an effort to start it, but that another vehicle would run him down and injure him.

"We think the trial court was right in sustaining a general demurrer to the petition, and therefore recommend that the judgment of the Court of Civil Appeals should be reversed, and that of the trial court affirmed."

In Gonzales v. City of Galveston, 84 Tex. 3, 19 S. W. 284, 285, 31 Am. St. Rep. 17, opinion by Judge Wm. Collard of the old Commission of Appeals and approved by the Supreme Court, a pile of lumber had been left by a lumber company, who had its lumber yard near by, on or near one of the streets of Galveston; that a drayman hauling some lumber attempted to pass this pile of lumber, hitting the pile with extended pieces of lumber on his dray, and knocked the pile down, and two children on the other side of the pile, not having been seen by the drayman, were badly injured, one of them fatally. The court said:

"It is true, if the drayman had not run his load against the lumber, the accident would not have occurred; and, on the other hand, if the lumber had not been in the street, it would not have occurred. Dispense with either of these facts, and there would have been no injury. The liability cannot be tested in this manner, nor by comparing the negligence of the two, if both were guilty of negligence. If the presence of the lumber pile in the street was at the time chargeable to the negligence of the city, and such negligence, together with the act of the drayman, caused the injury, it would be in part the proximate cause. This view is in accord with the decisions of our supreme court. In the case of O'Connor v. Andrews, 81 Tex. 28, 16 S. W. 628, 630, this doctrine is unmistakably adopted by our supreme court. Justice Henry, delivering the opinion, approves the principle stated in text writers, quoting from them as follows: 'An intervening act of an independent, voluntary agent does not arrest causation, nor relieve the person doing the first wrong from the consequences of his wrong, if such intervening act was one which would ordinarily be expected to flow from the act of the first wrongdoer. The mere fact that another person concurs or co-operates in producing the injury, or contributes thereto in any degree, whether large or small, is of no importance.' The opinion proceeds to add, 'If the negligent acts of the defendant and the electric wire company were simultaneous and concurrent, both were liable for the consequences.' * * *

"By 'proximate cause,' we do not mean the last act of cause, or nearest act to the injury, but such act, wanting in ordinary care, as actively aided in producing the injury, as a direct and existing cause. It need not be the sole cause, but it must be a concurring cause, such as might reasonably have been contemplated as involving the result, under the attending circumstances"—citing cases.

The case of T. & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162, 163, is recognized by the profession as being one of the standard cases on the intervention of independent agency, on the question of proximate cause, etc. In that case Bigham and others were fixing to load some cattle on the railroad. The gate to the cattle pens was out of repair and the fastening thereof was defective. Such condition was due to the negligence of the defendant company. In order to prevent the escape of the cattle intended for shipment, the appellee was in the act of fastening it by means of a rope which he had secured for that purpose, when the noise of a passing freight train so frightened the cattle as to reduce them to a condition of panic. They plunged

towards the gate and upon it, the one upon the top of the other, and before the appellee could escape they hurled him some 20 feet upon the ground, where he fell unconscious from the violence of the contact. It was claimed but for the condition of the gate the cattle would not have escaped. The court said:

"The maxim that, 'in law, the immediate, and not the remote, cause of any event, is regarded,' applies to cases of negligence. * * * But the word 'proximate' is not happily used in that connection. In ordinary language, a proximate cause is the nearest cause; but, in a legal sense, an act of negligence may be deemed a proximate cause of an injury, although it may not be the last cause in a connected succession of events which have led to a result. It is usually laid down, in cases of negligence, that, in order to constitute the proximate cause of an injury, the injury must be the natural and probable result of the negligent act or omission. Since every event is the result of a natural law, we apprehend the meaning is that the injury should be such as may probably happen as a consequence of the negligence, under the ordinary operation of natural laws. The rule is sometimes put upon the ground that to allow a recovery for injuries resulting from remote causes would lead to intolerable litigation, and this seems to be indicated in Bacon's paraphrase of the maxim quoted above: 'It were infinite for the law to consider the causes of causes, and their impulsions one of another. Therefore it contenteth itself with the immediate cause, and judgeth of acts by that, without looking for any further degree.' But it seems to us that as applied to the law of negligence, at least, a better ground for the rule is that a party should not be held responsible for the consequences of an act which ought not reasonably to have been foreseen. In other words, it ought not to be deemed negligent to do or to fail to do an act when it was not anticipated, and should not have been anticipated, that it would result in injury to any one. To require this is to demand of human nature a degree of care incompatible with the prosecutions of the ordinary avocations of life. It would seem that there is neither a legal nor a moral obligation to guard against that which cannot be foreseen, and under such circumstances the duty of foresight should not be arbitrarily imputed."

The Supreme Court held that the company ought not to be held to foresee as a result of the imperfect fastening of the gate the injury suffered by plaintiff, or that any injury similar in character would result.

In T. & P. Ry. Co. v. Kelly (Tex. Civ. App.) 78 S. W. 372, affirmed by the Supreme Court in 97 Tex. 619, 80 S. W. 1197, N. J. Kelly and wife sued the railroad company for damages arising from personal injuries alleged to have been inflicted by the negligence of the defendant in obstructing Myrtle street in the city of El Paso and in having a hole or depression on its track into which the vehicle of appellees ran, precipitating Mrs. Kelly to the ground. The facts, as narrated by appellees and a witness offered by them, were that on a certain afternoon while Kelly and his wife and a child and another person were riding in a vehicle, and when they reached Myrtle street, they found it completely blocked by the cars of appellant, which extended from one side of the street to the other, and for some distance from the street on either side. A strong wind was blowing, carrying with it sand. Kelly was driving the horse attached to the vehicle, and he could not see well because it was about dusk and the sand was blowing into his eyes. After standing at the crossing for 10 or 15 minutes, waiting for the cars to be moved, he noticed several parties passing around to the right, and one of them said, "Friend, you can drive to the right," and he drove out of the street, and endeavored to cross over the tracks of appellant. While going across, one wheel of the vehicle went into a hole or depression on one of the tracks, and Mrs. Kelly was thrown out, and sustained serious injuries. The hole was not seen on account of the late hour and the sand. It was held that the fact that defendant may have been negligent in obstructing the street was not the proximate cause of the injury, as plaintiffs, when they undertook to cross at a point where defendant was not bound to keep the right of way safe for travel, did so at their own peril.

In the case of Ft. Worth & R. G. Ry. Co. v. Neely, 60 S. W. 282, 283, opinion by Chief Justice Conner of this court, the horse which plaintiff's husband was driving was frightened at defendant's engine, and ran away, and the husband was killed by being thrown from the buggy, on the horse's running into a mudhole in the street, caused by an overflow from defendant's tank. The decedent knew of such mudhole. It was held that an instruction that if decedent's horse had run away, but that he would not have been killed if such mudhole had not existed, the verdict should be for plaintiff, was error, since the proximate cause of decedent's death was the runaway. The court said:

"Whatever may be the varying views of the text writers and of courts of other states, we think that the principle involved has been clearly defined in the law of this state, and we do not feel that we can add to what has been so carefully and well said by Chief Justice Willie in the case of Seale v. Railway Co., 65 Tex. 274 [57 Am. Rep. 602], and by Chief Justice Gaines in the case of [Texas & P.] Railway Co. v. Bigham, 90 Tex. 223, 38 S. W. 162. We think it apparent from a careful consideration of these cases, and of the authorities there cited, that where the negli-

gence alleged and shown is but passive, not amounting to willful or wanton wrong or act, and not expressly inhibited by law, as is the case in the particular under consideration, that then the negligent actor is responsible for such injuries only as may be reasonably anticipated or contemplated as results likely to flow from his negligence. If it be conceded that the mudhole was the immediate cause of the injury in this case, and that but for its existence and condition death would not have resulted, nevertheless there was an efficient intervening cause of the accident, to wit, the fright and violent running of the horse of the deceased. * * * An accident and injury so caused could not have been reasonably anticipated, and the negligence of appellant relating to the mudhole cannot, therefore, be considered as the proximate cause of the injury."

In Franklin v. Houston Elec. Co., 286 S. W. 578, 579, by the Galveston Court of Civil Appeals, the deceased attempted to board a passing street car and to do so went to the place where it was alleged it was usual for the street car to stop, but did not, which was alleged as negligence. After the street car had passed the place where it was alleged it was its duty to stop to take on passengers, the prospective passenger was hit by an automobile driven by some person unknown to plaintiff and injured. The trial court sustained the general demurrer. The court said:

"We think the general demurrer was properly sustained. While it is true that, had the operative of appellee's street car stopped his car and had permitted appellant to enter, he would not have suffered the injury complained of, it is made to appear on the face of plaintiff's petition that the failure of the street car operative to take him on as a passenger was not the proximate cause of his injury, but that such injury resulted from a cause intervening between the alleged negligence of the defendant and the damage sustained, to wit, the act of a third person in driving his automobile against plaintiff. The petition does not allege actionable negligence, nor does it allege any proximate causal relation between the negligence alleged and the injury," citing 17 C. J. 515. "We think the trial court would have been justified in concluding that the accident shown by plaintiff's petition was an extraordinary one, one which is not in experience and observation of mankind the natural consequence of the act of negligence complained of."

In Fountain v. Houston E. & W. T. Ry. Co. (Tex. Civ. App.) 298 S. W. 630, it was held that in an action against a railroad company for personal injury, on account of the obstruction of a street by a freight train, it was not the proximate cause of plaintiff's injury, received while climbing between cars, and a general demurrer to the petition alleging such facts was properly sustained.

From these decisions and many others that might be cited, we conclude that the trial court should have sustained a general demurrer, inasmuch as the facts pleaded failed to show that the death of the deceased was proximately the result of the blockading of Seventh street, but was caused by an independent and efficient intervening cause, to wit, the act of the automobile driver in hitting the deceased.

The facts appearing to have been fully developed, and it further appearing that no maintainable right of action can be supported on the facts pleaded, the judgment of the trial court is reversed, and judgment is here rendered for defendant. The general demurrer should have been sustained.