This testimony is not disputed. Appellant did not testify.

In 6 Tex.Jur., Sec. 17, at page 568, we find the rule stated as follows:

"If proof of the first alleged marriage is made by the introduction of the marriage license, the state must establish that the defendant is the person who is mentioned in the license. The identification may be established by the testimony of witnesses, by other direct proof, or by circumstances from which the jury may draw the inference of identity."

The conclusion is expressed that appellant's admission to his second wife was sufficient circumstance by which the jury were authorized to conclude that he was the person named in the marriage license and in the return of the justice of the peace thereon.

The facts are sufficient, therefore, to support the conviction.

No reversible error appearing, the judgment is affirmed.

Opinion approved by the court.

## SIDRAN v. WESTERN TEXTILE PRODUCTS CO. OF TEXAS.

### No. 14633.

Court of Civil Appeals of Texas. Dallas.

May 1, 1953.

Rehearing Denied May 29, 1953.

Corenbleth, Thuss & Jaffe, Dallas, for appellant.

Johnson & Rembert, Wm. A. Rembert, Jr.; Callaway & Reed and O. D. Montgomery, all of Dallas, for appellee.

DIXON, Chief Justice.

This is an appeal by appellant Sidran, plaintiff below, from an adverse judgment in a suit for damages against appellee Western Textile Products Company, defendant below. A jury found material negligence issues against appellant. The sole question on appeal is whether the case should be reversed for misconduct of the jury.

Appellant operated a clothing factory on the first and second floors of a building located at the corner of Elm and Record Streets in the City of Dallas, Texas. Appellee operated a business on the third floor of the same building. On its floor, appellee owned and operated a refrigerated box dispensing bottled soft drinks, which box was also equipped with a bubbler, or water fountain, to provide cold water to users. Sometime on July 3, 1951 the water pipes in the box sprang a leak. Water from the leak came through the ceiling onto appellant's premises on the second floor, causing water damage to piece goods and equipment belonging to appellant.

About a week before the leak developed, the refrigeration unit in the box had gone out of order. While so out of order the box could not be used for cooling bottled drinks, but the water fountain was still used for drinking purposes, though the water was warm.

Appellant plead and offered testimony pertaining to several alleged acts of negligence on the part of appellee in connection with the operation of the box. The jury answered the negligence issues in the negative but found that appellant had suffered water damage in the amount of $11,778.58.

One of the negligence issues submitted and the jury's answer thereto was as follows:

"Special Issue No. 1: Do you find from a preponderance of the evidence that the failure of defendant to cut off the water going into the Dr. Pepper cooling box in question after working hours on July 2, 1951, was negligence, as that term has been defined herein? Answer 'Yes' or 'No.' Answer No."

Appellant relies on three acts of misconduct. (1) During the deliberations of the jury, one juror stated that in a building where he worked and of which he had charge, there was a refrigerated cooler that went out, and the water fountain was continued in use for three months without refrigeration, and nothing happened to the water pipe—no leak, no breaks.

(2) During the deliberations of the jury there was a discussion as to the effect the jury's answers to the negligence issues would have on the judgment in the case. One juror stated that Mr. Sidran would be able to recover, regardless of how the jury answered the negligence issues.

(3) The jurors inadvertently took with them into the jury room and kept in the jury room for more than three hours, a carbon copy of the court's charge belonging to one of appellee's attorneys. On this copy the attorney had jotted down notes for use in his argument to the jury. Also, the attorney had filled in the blank spaces with the answers to the issues as appellee wanted the jury to find them.

It is not disputed that the above occurrences took place in the jury room and that each of them is an act of legal misconduct. However under Rule 327, Texas Rules of Civil Procedure, the burden is on the party asserting the misconduct to prove that " * * * it reasonably appears * * * that injury probably resulted to the complaining party." Whether misconduct probably resulted in injury to the complaining party, once the fact of misconduct is established, is a question of law to be decided in the first instance by the trial court, and on appeal by the reviewing court. Scoggins v. Curtiss & Taylor, 148 Tex. 15, 219 S.W.2d 451. In the case before us, appellee in four counterpoints takes the position that under the circumstances each of the acts of misconduct was harmless. Appellant, of course, contends in three points on appeal that it has successfully carried the burden of showing that injury probably resulted.

"Misconduct of the jury" is a legal phrase meaning an unlawful or unauthorized act done by the jury, or any of its members, in connection with the trial. Louisville & N. R. Co. v. Green, 100 Tenn. 238, 47 S.W. 221. It does not necessarily imply an evil or corrupt motive on the part of the jury or prevailing party. Chicago, etc., Ry. Co. v. Deaver, 45 Neb. 307, 63 N.W. 790. In justice to the parties hereto we think it is only fair for us to say that in this case appellant does not contend, nor does the record indicate, that there was intentional wrongdoing or bad faith on the part of anyone.

All twelve of the jurors were brought back to court and testified at the motion for new trial. As might be expected, the jurors, perhaps feeling that a moral issue was involved, were inclined to defend their actions. In fact one of them was quite hostile. The jurors denied that the acts of misconduct in any way affected their verdict. However, whether their verdict was affected is a law question which the court must decide from the record as a whole, and the court in reaching its conclusions may not consider the denials of the jurors. Motley v. Mielsch, 145 Tex. 557, 200 S.W.2d 622.

Referring to act of misconduct No. (1), ten of the jurors testified that they heard the statement made. The jury spent a considerable length of time on issue No. 1 before reaching an agreement as to their answer. The foreman testified, and his

testimony was corroborated, that after the statement was made, he (the foreman) said, "Well, we can't even think about that. Your machines, and these—these are the ones we are talking about." One juror at first wanted to answer issue No. 1 "Yes," but afterwards changed his mind. It is not clear from the testimony whether he changed his mind before or after the statement was made. There is testimony, though it is not entirely uncontradicted, that after answering some of the issues, the jury later went back over their answers and rediscussed them, especially the negligence issues. As to act of misconduct No. (1), we do not believe that the appellant has shown that the statement in question, standing alone, probably resulted in injury to him.

We go on to consideration of act of misconduct No. (2). A discussion took place in the jury room as to whether it was necessary to find appellee guilty of negligence in order for appellant to recover. The juror who changed his mind about issue No. 1 took the position that a finding of negligence was necessary. One of the jurors said it was not, that the negligence issues were immaterial, and that appellant would be allowed such damages as were awarded by the jury in answering the damage issue. We quote from the testimony of the juror who made the statement:

"Q. Now, was there any discussion among the jury as to Mr. Sidran's being able to recover, regardless of how you answered those negligence questions, if you found some damages for him? A. Yes. * * *

"Q. What did you say? A. I said that I didn't think it was negligence, but that I did think that Sidran should be paid a reasonable sum for damage. * * * I was voting no negligence, with the understanding that we were to give a little—or were to give consideration to paying Sidran a little for what he was entitled to on the damage.

"Q. And you understood that when you all decided these issues on damages that he was to get paid that much money? A. That's right. * * *

"Q. You expressed that opinion to the jurors? A. I did. * * *

"Q. Did any of the other jurors agree with you there, or discuss it? A. All of them did."

We also quote from the testimony of another juror:

"Q. Was there any statement made by any juror that it was material what the other issues were, that if you answered the damage issues that the plaintiff would recover damages, or words to that effect? A. Yes, sir, there was a statement made on that, when we were discussing with regard to the amount of damages, I believe it was something to the effect that regardless of how we answered these questions, Mr. Sidran would get damages under the law, and the man that said that, I said that I didn't know a thing in the world about the law of Texas, and how did I know that Mr. Sidran would get that. * * *

"Q. Well, this was one of the jurors you were talking to? A. Yes, * * *."

In the interest of conserving space we shall not quote more of the testimony on this point. We believe it is reasonably probable that the appellant suffered injury as a result of this misconduct. Even if only one juror was influenced, that is enough to vitiate the verdict. Texas Electric Ry. Co. v. Wooten, Tex.Civ.App., 173 S.W.2d 463, writ ref. w. m.

We next consider act of misconduct No. (3). Appellee's carbon copy of the charge, with the desired answers written in, and an attorney's memoranda for argument for appellee inscribed on it, inadvertently was taken into the jury room where it remained several hours while the jury deliberated. Apparently the document was lying on a table in close proximity to the exhibits which had been introduced in evidence. One of the jurors in gathering up the exhibits picked up the copy of the charge along with the exhibits. During the course of the jury's deliberations the presence of the document was discovered. Examination of the instrument disclosed

that it was not an exhibit that had been introduced in evidence, so upon the order of the foreman it was handed to the bailiff at the door of the jury room.

We quote from the testimony of a juror referring to the copy:

"Q. Did you read any of it? A. Oh, I looked through it, yes, sir.

"Q. Well, what did you find when you looked through it? A. I found that the answers were already in it.

"Q. The answers were already answered? A. Yes, sir.

"Q. Were they in pencil? A. Yes, sir. * * *

"Q. Did you comment on the answers in there to the jury? A. Yes, sir, I did. * * *

"Q. What did you say? * * * A. * * * 'Here are questions already answered.' * * *

"Q. Well, what I mean is, did you tell the jury how any of them were answered in that instrument? A. Well, I don't recall whether I told them how they were answered or not.

"Q. You may have? A. They were in favor of the defendant.

"Q. You knew that, of course, when you read it? A. Yes."

◼ Appellee contends that appellant has waived his right to complain about act of misconduct No. (3). The record shows that immediately after the appellee's copy of the charge was handed out of the jury room to the bailiff, appellant dictated a bill of exceptions based on the presence of the copy in the jury room. However appellant did not at that time move the court to declare a mistrial. Appellee says that this failure to move for a mistrial immediately upon discovery that the document had been in the jury room had the legal effect of waiving the misconduct.

We do not agree with appellee. At the time in question appellant could not have known whether the document had been seen by more than one juror, or read by any of them, or whether it had been the subject of comment and consideration by any of the jurors. He could not have been in pos-session of the facts necessary to determine whether the presence of the instrument in the jury room probably injured him. It was not until he learned later what had transpired in the jury room that he was in position to urge the grounds proper and necessary for a mistrial. As a matter of law, he cannot be held to have waived the improper conduct of the jury at a time when he did not even know what the conduct was. Szanto v. Pagel, Tex.Civ.App., 47 S.W.2d 632, writ dismissed; 43 Tex.Jur. 895.

◼ We think it reasonably appears that misconduct No. 3 probably resulted in injury to appellant.

◼ In reaching our conclusion it is our duty to consider the record as a whole. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462. If we had any doubt as to the harmful effect of act No. (2), or of act No. (3), each considered by itself, our doubt would disappear when we consider the cumulative effect of all three of the acts of misconduct when taken together. That we should weigh this cumulative effect is indicated by a statement by Justice Smedley of our Supreme Court in Scoggins v. Curtiss & Taylor, supra [148 Tex. 15, 219 S.W.2d 453]:

"* * * These three acts of misconduct are of such nature that they may have caused injury to the plaintiffs. It is probably true that no one of them, considered separately in the light of the record as a whole, would require the granting of a new trial. But in our opinion, when all of them are taken together and considered with the misconduct first discussed, * * * it reasonably appears that injury to petitioners was probably caused by them and that petitioners did not have the impartial trial by jury to which they were entitled."

We conclude that the three acts of misconduct involved here, considered together, reasonably appear to have resulted in harm to the complaining party.

The judgment of the trial court will be reversed and the cause remanded for new trial.

Reversed and remanded.