Kenneth A. WIRTZ et ux., Appellants,

v.

H. N. ORR et ux., Appellees.

No. 4818.

Court of Civil Appeals of Texas, Eastland.

Feb. 5, 1976.

Rehearing Denied Feb. 26, 1976.

Harry W. Margolis, Weinberg, Sandoloski, Margolis & Staffin, Dallas, for appellants.

Virgil E. Rogers, Gillis, Rogers & Taylor, Dallas, for appellees.

McCLOUD, Chief Justice.

On January 27, 1976, we entered an order withdrawing our previous opinions and judgment entered in this cause. The following opinion is substituted therefor.

H. N. Orr and wife, Janet Orr, sued Kenneth A. Wirtz and wife, Dorothy Wirtz, on a written contract dated June 30, 1972, for the sale and exchange of property. Defendants owned a farm in the State of Missouri and H. N. Orr owned an apartment complex in Dallas, Texas. After the exchange of properties plaintiffs filed the instant suit alleging they were due more monies out of the closing than they received, and also, there should have been more silage located on the Missouri farm than was actually there.

The jury found in favor of plaintiffs as to the shortage of funds at closing and found against plaintiffs as to the shortage of silage. Judgment was entered accordingly. Defendants, Kenneth and Dorothy Wirtz, have appealed. Default judgment was rendered against Ellis Spitz and he has not appealed.

Plaintiffs contend the June 30, 1972 contract is not ambiguous. We disagree. The contract provides that defendants

("First Parties") will convey certain personal property by bill of sale warranting same to be free and clear of liens and encumbrances:

". . . except an encumbrance on the Harvestore silo the principal amount of which is $9,547.16 which First parties agrees to pay and will remain to above described land when paid in full. In the event first parties fail to make payment, second parties may assume loan and the balance of said loan amount shall be deducted from the *balance of original $75,000.00 on loan for the Cass County, Mo. property.*" (Emphasis added)

This is the only mention in the contract of the $75,000.00 loan. We cannot tell from the contract who was going to loan money to whom, under what terms or for what purposes.

The contract provides further:

"By way of explanation and to facilitate the exchange of these properties it is agreed and understood that second parties are in need of cash for the payment of certain amount of indebtedness. To secure said cash for second parties, first parties agree to immediately apply for a commitment for a loan of $55,000.00 or more and to process said commitment to completion prior to the date of closing. On closing the proceeds from said loan shall be distributed as follows:

1. $37,500.00 to Mrs. Dell Orr to satisfy a judgment in a divorce decree with H. N. Orr;
2. $1,400.00 to Bruce E. Staffin, to satisfy a judgment for attorney fees for Mrs. Dell Orr;
3. $1,100.00 as a fee for the loan;
4. Approximately $15,000.00 minus interest on loan to Citizens Bank of interest will go to Second parties.

By securing said loan for the benefit of second parties, first parties shall then convey the Cass County, Missouri, property subject to said loan and second parties shall assume and agree to pay said loan.

Should first parties fail to secure a commitment for said loan, within a period of 30 days from the date of this agreement, then first parties shall secure a loan from the Citizens Bank of Windsor, Windsor, Missouri, for which they now represent that they have a commitment in the amount of $48,452.84, and said loan proceeds shall be distributed in the same manner as hereinbefore set forth for the distribution of the proceeds of the loan except there will be no distribution to second parties."

The court properly permitted oral testimony as to the intent of the parties. Defendants showed that a prior written contract dated May 23, 1972, signed by defendants, H. N. Orr, and his former wife, Dell Rose Orr, was made contingent upon Orr's getting a $75,000 loan on the farm or alternatively Kenneth Wirtz "*carring* a loan until the loan can be obtained". This contract further provided, "The difference in equities will be carried back *buy* Kenneth Wirtz, on the farm." The contract makes no mention of the purpose of the loan and fails to mention an outstanding indebtedness of $9,547.16 on the silo.

It is undisputed, however, that at the time the May 23, 1972 contract was signed, the difference in equity passing from Orr to defendants was to be $18,000. In attempting to consummate the contract, Orr applied to the Federal Land Bank for a $75,000 loan and signed a written instrument acknowledging the breakdown of the loan as follows:

"$37,500.00 to be paid to Dellrose Orr
$18,000.00 to be paid to Kenneth Wirtz
$9,547.16 to be paid to Kenneth Wirtz to finance silo.
The remainder of Loan will go to H. N. Orr in cash."

The Federal Land Bank did not make the loan and the parties continued to negotiate. A second contract form was prepared but rejected by all parties. Finally on June 30, 1972, the contract sued on by plaintiffs, was executed by H. N. Orr and defendants.

The closing of the Missouri portion of the transaction occurred first. The defendants executed a deed to the property and a bill of sale to the personalty, which conveyed the silo subject to an existing indebtedness of $9,547.16. At the same time, H. N. Orr and Janet Orr signed a note payable to defendants, secured by a deed of trust on the Missouri farm, in the sum of $65,452.84 ($75,000 less the amount of the silo mortgage).

Two days later the parties closed the transfer of the Dallas property. The title company prepared a closing statement. Orr executed the closing statement, the deed to the realty, and the bill of sale of the personalty. Orr received $7,461.07 from the title company. The closing statements on the Missouri property had not been prepared at the time of the Dallas closing. Orr refused to sign these closing statements contending he was entitled to more money.

Plaintiffs contend defendants were to assume the mortgage on the property they received and were to loan plaintiffs $75,000. Plaintiffs urge they did not "receive full consideration due from the $75,000". They assert the property was to be exchanged without an $18,000 equity difference and Orr was not to assume the silo mortgage without additional compensation. Defendants argue plaintiffs failed to credit (1) $18,000 equity difference to defendants, (2) $4,285.11 credit allowed by defendants on plaintiffs' debt obligation, and (3) $9,547.16 silo mortgage. Defendants point out that such credits, if allowed, offset the claims made by plaintiffs.

Defendants alleged and contend the contract relied upon by plaintiffs is ambiguous. The court submitted the following issues:

"ISSUE NO. 1

Do you find from a preponderance of the evidence that *under the contract between the parties* at the time of the exchange of properties, that Norman Orr was not to pay a difference of $18,000 to Kenneth A. Wirtz? (Emphasis added)

In answering the preceding Issue, you are not to take into consideration any other credits or charges other than the $18,000 inquired about.

Answer   "We do" or "We do not"
Answer:   We do                          "

"ISSUE NO. 3

Do you find from a preponderance of the evidence that *under the contract between the parties* at the time of the exchange of properties that Kenneth Wirtz became obligated to Norman Orr in an amount equal to the silo mortgage when Wirtz conveyed the silo to Orr subject to the outstanding mortgage? (Emphasis added)

Answer   "We do" or "We do not"
Answer:   We do                          "

Defendants argue that the submission of these issues constitutes reversible error because they ask the jury a question of law as to the legal effect of the contract rather than asking the jury to resolve the question of the intent of the parties. We agree. Special issues 1 and 3, as submitted, ask the jury for the construction or meaning of the contract, and in fact both issues use the phrase "under the contract".

The court in *Kemper v. Police & Firemen's Ins.*, 48 S.W.2d 254 (Tex.Com.App.—1932), said:

".   .   . The phrase, 'as required by the terms of the contract,' permitted the jury to construe the contract. The construction of a contract is a question of law for the court, and not a question of fact for a jury."

The intent of the parties should have been submitted to the jury. In *Trinity Universal Insurance Company v. Ponsford Brothers*, 423 S.W.2d 571 (Tex.1968), the court stated:

".   .   . A jury may not be called upon to construe the legal effect of an instrument. *Knutson v. Ripson*, 163 Tex. 312, 354 S.W.2d 575 (1962); *Burgess v. Sylvester*, 143 Tex. 25, 182 S.W.2d 358 (1944). The jury may, however, resolve an ambiguous intent, and the issue asked about

intent as a fact issue. *Skelly Oil Co. v. Archer,* supra; *Ellisor v. Kennedy,* 128 S.W.2d 842 (Tex.Civ.App.1939, writ ref.)."

See also *Burgess v. Sylvester,* 143 Tex. 25, 182 S.W.2d 358 (1944); *Schoenberg v. Forrest,* 228 S.W.2d 556 (Tex.Civ.App.—San Antonio 1950, writ ref. n. r. e.); *Cain v. Tennessee-Louisiana Oil Company,* 382 S.W.2d 794 (Tex.Civ.App.—Tyler 1964, aff'd 400 S.W.2d 318 (Tex.1966); *Totten v. Houghton,* 2 S.W.2d 530 (Tex.Civ.App.—Eastland 1927, no writ).

■ Plaintiffs contend special issues 1 and 3 are inferential rebuttal issues and defendants had the burden of requesting proper issues. We disagree. An inferential rebuttal issue, which should not be submitted under Rule 277, T.R.C.P., is one which disproves the existence of an essential element submitted in another issue. G. Hodges, Special Issue Submission in Texas 40 (1959).

■ Defendants properly objected to the submission of issues 1 and 3. The June 30, 1972 contract is ambiguous and the Orrs, as plaintiffs, had the burden of requesting proper issues. *Skelly Oil Company v. Archer,* 163 Tex. 336, 356 S.W.2d 774 (Tex.1961); *Neece v. A. A. A. Realty Co.,* 159 Tex. 403, 322 S.W.2d 597 (Tex.1959). The defendants were required to properly object to the issues, but they were not required to request the submission of the issues in substantially correct form. Rule 279, T.R.C.P.

Defendants have urged certain points which they contend entitle them to a rendition of judgment. We have considered such points and they are overruled.

Rule 434, T.R.C.P. was amended effective January 1, 1976, to permit partial remands and partial retrials when the error affects a part only of the matter in controversy and such part is clearly separable without unfairness to the parties. In our opinion, the shortage of silage issue has been correctly tried and need not be tried again. *Huffington v. Upchurch,* Tex., 532 S.W.2d 576, Vol. 19, Texas Supreme Court Journal, No. 17,

January 24, 1976. The jury found in favor of defendants on the shortage of silage issue and plaintiffs in no way informed the trial court of their dissatisfaction with the judgment entered. They at no time filed a cross-point asserting any error. The error in the instant case affects only that part of the controversy involving the amount of money plaintiffs were to receive as a result of the transaction.

The judgment of the trial court is affirmed in all respects as to Ellis Spitz who has not appealed. We affirm that part of the judgment which denied plaintiffs any recovery for an alleged shortage of silage. The judgment is in all other respects reversed and remanded.