**ALAMO CARRIAGE SERVICE, INC.**
**Edith Molnar and Lazslo Beres,**
**Appellants,**

v.

**CITY OF SAN ANTONIO, Appellee.**

No. 04–87–00650–CV.

Court of Appeals of Texas,
San Antonio.

April 12, 1989.
Rehearing Denied May 5, 1989.

Don Killingsworth, Law Offices of Ernest V. Rountree, Tyler, for appellants.

Paula Dlugosz, Steven W. Arronge Asst. City Attys., San Antonio, for appellee.

Before BUTTS, BIERY and CARR, JJ.

## OPINION

CARR, Justice.

This is a suit for damages, injunction and a declaration judgment brought by Alamo Carriage Service, Inc., Edith Molnar and Laslo Beres (appellants) against the City of San Antonio (City) as a result of appellants' loss of certain permits to operate horse carriages in the City of San Antonio. Initially, appellants had a permit to operate horse carriages as a result of a 1978 city ordinance. In a 1984 suit appellants alleged that the city had revoked five of the permits without according appellants their procedural due process and in a second suit filed in 1985, appellants contended that the city had revoked the remaining five permits again alleging depriviation of procedural due process. The two causes were consolidated for trial before a jury. From a verdict and judgment adverse to appellants, this appeal was perfected.

The record reflects that in 1978 the City Council of San Antonio passed an ordinance authorizing issuance of a permit to Happy Cooker, Inc. to operate horse-drawn carriages for hire along designated routes on downtown streets. The permit was for a period of three years beginning May 1, 1979, and authorized the operation of not less than one nor more than ten horse-drawn carriages. The permit expressly provided that it was not transferable or assignable in any manner without the consent of the city council by ordinance and that the stable facilities be open for inspection at all reasonable times. The permits did not contain a renewal provision.

Edith Molnar was a stockholder in Happy Cooker, Inc. In March of 1980, Happy Cooker, Inc. was dissolved and stocks were transferred to Mrs. Molnar, individually. In March of 1982, Laszlo Beres, Mrs. Molnar's son, acquired the carriage business.

In 1985, Alamo Carriage Service, Inc. was incorporated.

The business of horse-drawn carriages was novel to modern San Antonio when the city council approved the initial 1979 permit. Experience during the three years that appellants' 1979 permit was in effect indicated a need to address certain concerns prior to the issuance of new permits such as traffic safety and the treatment of the animals. In 1982, the City began to formulate a new and more comprehensive carriage ordinance and the city council referred this matter to a transportation committee, which was composed of council members.

The evidence further reflects that the transportation committee deliberated these concerns. At hearings before the committee, citizens, the appellants and other applicants participated. The matter was later discussed extensively by the San Antonio City Council. The appellants, other permit applicants, and citizens addressed the council before it passed the 1983 ordinance which authorized the issuance of permits to three carriage companies, including the appellants. Each of the permittees was authorized to operate up to five (5) carriages.

During the interval, between the time the 1979 permit expired and the passage of the new 1983 ordinance, appellants were allowed to operate under the old 1979 permit.

The permits issued under the 1983 ordinance contained most of the provisions of the original 1979 permit. Rather than a "street rental" charge of ten (10) percent of the gross monthly receipts, each permittee was required to pay an annual fee of $500 per carriage. In addition to five (5) regular carriages, permittees were allowed up to five (5) supplemental carriages to be used for charter service after 6 P.M. upon prior approval from the supervisor of public utilities department of the city. The new permits specified minimum requirements relating to the health of the horses; provided for the inspection of the carriages and equipment; contained detailed lighting

requirements; the hours of operation and routes were more restrictive than the original permit. The 1983 permit specifically provided that additional restrictions could be imposed by city council and that temporary restrictions could be imposed by the director of public works and the police department during heavy traffic congestion resulting from construction or holiday activities. As in the original 1979 permit, the 1983 permit contained no provision for renewal.

The record reflects that in late 1984, the city staff began working on a third horse-drawn carriage ordinance. The traffic division of the police department and the departments of public works and health were consulted. Private individuals, businessmen and organizations were also active in the development of the new ordinance. The city staff reviewed all permittees with respect to their history regarding conformance with the 1983 permit regulations and found that appellants had the worst performance record of the three carriage companies. There was testimony that: Alamo's horses were not properly cared for, were overworked, were worked though lame and were worked with saddle sores. The behavior of a horse which is worked in an exhausted or lame condition or with open sores is unpredictable and such horses are apt to collapse or bolt; the appellant's horses did both in downtown traffic.

On March 7, 1985, city council passed an ordinance extending the 1983 permits for a short period pending the completion of city council review. Subsequently, city staff recommended that permits be issued to three carriage companies to the exclusion of the appellants. An ordinance was passed on June 6, 1985, which approved the adoption of new regulations for horse-drawn carriages and the appellants as applicants were present and addressed council at the June 6th meeting along with representatives of citizen groups concerned with the humane treatment of animals. Council members questioned the applicants and other individuals in addition to city staff and were available for questions regarding the permits and their decision making process. Council did not award permits at its June 6th meeting.

The evidence reflects that on June 20, 1985, council passed another ordinance extending the 1983 permits until June 27th and on June 27, 1985, after another lengthy meeting with representatives of appellants and their attorney present and after addressing city council, council passed its June 27th ordinance approving the issuance of permits under the new regulations to three carriage companies, but not to the appellants. (We find that all extensions of appellants' 1983 permits *expired* on that date.)

In their different points of error appellants have combined assignments of error based on the legal and factual sufficiency of the evidence. Since appellants had the burden of proof, we believe the proper legal insufficiency challenge is "as a matter of law" and the proper factual insufficiency challenge is "against the greater weight and preponderance." *See generally* O'Conner, *Appealing Jury Findings*, 12 HOUS. L.REV. 65 (1974).

In reviewing a no evidence point, the court must consider only the evidence and inferences tending to support the finding and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W. 2d 821, 823 (Tex.1965); *Larson v. Cook Consultants*, 690 S.W.2d 567 (Tex.1985). Because plaintiffs must claim to have met their burden, the court must also find that the contrary proposition is established as matter of law. *Holley v. Watts*, 629 S.W. 2d 694, 696 (Tex.1982). If there is any evidence of probative value supporting the adverse finding, then the point of error must fail. *Id.* at 697; *Jordan v. Ortho Pharmaceuticals, Inc.*, 696 S.W.2d 228 (Tex.App.—San Antonio 1985, writ. ref'd n.r.e.) (adverse finding against party with the burden is error only if the fact is established as a matter of law).

When a factual insufficiency point is raised, the court is required to examine all the evidence and may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *In re King's*

*Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). But the trier of the fact is the sole judge of the facts proved, the credibility of the witnesses and the weight to be given to their testimony. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792 (1951). The jury may have believed all or part of a witness's testimony. *Id.* The court may not substitute its judgment for a jury finding even if a different conclusion could be reached after reviewing all the evidence. *Clancy v. Zale Corporation,* 705 S.W.2d 820 (Tex.App.—Dallas 1986, writ ref'd n.r. e.).

Appellants points of error one, six and seven challenge the jury's findings as to Special Issue No. 7. Pursuant to the provisions of the Texas Rules of Appellate Procedure, appellants have combined their claims as to the legal and factual sufficiency of the evidence to support the jury's findings as to Special Issue No. 7 in one point of error. *See* TEX.R.APP.P. 74(d) (Vernon 1988). Furthermore, since the arguments as to points of error one, six, and seven are similar, if not identical, we have combined these arguments for the sake of brevity.

*Special Issue No. 7* as submitted to the jury required it to answer whether or not appellants had been provided with notice, hearing, the confrontation and cross-examination of adverse witnesses, the presentation of witnesses and evidence in appellants' behalf, and findings of fact made by an independent committee. The issue was submitted to the jury with appropriate spaces for their answers as to 1983 and 1985, in which spaces the jury answered "No" indicating that appellants had been afforded those procedural processes.

The entire basis of appellants' claim in the trial court was that they had been deprived of procedural due process in the revocation of their permits to operate horse-drawn carriages in the City of San Antonio.

■ The initial determination which this Court must make is whether appellants had a constitutionally protected property right (in the city streets or their right to renew their permit) which brought them under the protection of the Due Process and Due Course of Law clauses of the United States and Texas Constitutions, respectively. If the permits expired, as indeed they did, appellants had no property right upon which to base their due process demands. Because of the Texas law on property interest in the streets and our findings that the permits had expired, we hold that appellants had no protected property rights and the jury's responses to Special Issue No. 7 are, therefore, immaterial to the disposition of the appeal.

Due process protection of a property right presupposes the existence of a protected right or interest. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (procedural protection of property under the Fourteenth Amendment applies to those interests that a person had already acquired). Property interests are not determined by the Constitution. They are created and defined by state law. *Id. Accord Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed. 2d 494 (1985). Only if the state creates a property interest does the Fourteenth Amendment right to due process attach.

The State of Texas does not recognize a right to acquire a vested interest to operate a business in the public streets. In *Greene v. City of San Antonio,* 178 S.W. 6 (Tex. Civ.App.—San Antonio 1915, writ ref'd), this court held that there is no right to use a street for the prosecution of private business, and use for that purpose may be prohibited or regulated as the state or municipality may deem best for the public good. In *City of San Antonio v. Bee–Jay Enterprises,* 626 S.W.2d 802 (Tex.App.— San Antonio 1981, no writ), we again held that there is no vested right to use the streets and highways in carrying on a commercial business. Cases so holding are legion and we will not attempt to cite them all.

Long ago this Court observed that the streets belong to the public. *City of San Antonio v. Fetzer,* 241 S.W. 1034, 1035 (Tex.Civ.App.—San Antonio 1922, writ ref'd). They are held in trust by the state

for the benefit of the public at large. *Id.* The state may delegate its control and power to regulate traffic to local authorities. *City of Dallas v. Harris,* 157 S.W.2d 710 (Tex.Civ.App.—Dallas 1941, writ ref'd). The legislature has conferred upon San Antonio, a home rule city, "... exclusive dominion, control, and jurisdiction in, over and under the public streets, avenues, alleys, highways and boulevards ..." TEX. REV.CIV.STAT.ANN. art. 1175, subd. 3 (Vernon Supp.1988). We hold that appellants did not have a property right to conduct a business in and over the streets and highways for profit. Indeed, the United States Supreme Court has specifically recognized that the use of the highways of a state for the purpose of gain is special and extraordinary, and may generally be prohibited or conditioned by the legislature as it sees fit. *Stephenson v. Binford,* 287 U.S. 251, 53 S.Ct. 181, 77 L.Ed. 288 (1932).

■ Appellant's contention that the city is estopped from denying the continued viability of the permits because it accepted money that was due under the expired permits and advised plaintiffs that they would be renewed is without merit. (The jury resolved the issue of representations of renewal against the plaintiffs.) Regulation of traffic is a governmental function. *Lorig v. City of Mission,* 629 S.W.2d 699 (Tex.1982). The doctrine of estoppel is not available against a municipality in matters affecting or involving its governmental functions. *City of San Antonio v. Pigeonhole Parking of Texas,* 158 Tex. 318, 311 S.W.2d 218 (1958).

Appellant's points of error one, six, and seven are overruled.

Pursuant to the provisions of the Texas Rules of Appellate Procedure, appellants have combined their points of error as to the sufficiency of the evidence to support the jury's finding as to Special Issue No. 3 in appellant's point of error number 2. *See* Tex.R.App.P. 74(d) (Vernon 1988).

■ Special Issue No. 3 as submitted to the jury required it to answer whether or not the City represented to appellants that the ten (10) horse-drawn carriage permits issued to appellants would be renewed. The issue was submitted to the jury with an appropriate space for their answer, in which spaces the jury answered "No" indicating that the City had not so represented to the appellants. Appellants strongly contend that this answer is not supported by the evidence, that, in fact, only an affirmative response is shown by the evidence adduced at trial.

We disagree. Our review shows that there is no evidence in the record that the City Council of San Antonio acting as a governmental body made any representations to the appellant. Whatever city staff or individual council members may have told appellants, the record does not demonstrate any reliance on their part.

Article II, Sec. 4 of the Charter of the City of San Antonio states:

[T]he Council shall have and exercise all powers now or hereafter conferred on the City; ... shall have the general care management and control of the City, its property and finances, and shall enact, alter, modify or repeal all ordinances and resolutions not repugnant to this Charter and the Constitution and laws of Texas.

It also provides:

The ownership, right of control and use of the streets, highways, alleys ... of the City is hereby declared to be inalienable by the City, except by ordinance passed by vote of a majority of the Council ... City Charter of San Antonio, art. XI Sec. 128.

■ The jury's finding, that the City of San Antonio had not represented to the plaintiffs that the ten carriage permits issued to them in 1979 would be renewed, is unquestionably correct. There is no evidence to support the contention that the City of San Antonio acting through its city council as a governmental body represented anything to the appellants. The City can only act by and through its governing body. *Stirman v. City of Tyler,* 443 S.W. 2d 354 (Tex.Civ.App.—Tyler 1969, writ ref'd n.r.e.); *Cook v. City of Addison,* 656 S.W.2d 650 (Tex.App.—Dallas 1983, writ ref'd n.r.e.). Statements of individual coun-

cil members are not binding on the City. *Id.*

In their dealings with the City, the appellants were charged with notice of the City's charter provisions which vested all powers in the city council and declared the right to control and use the streets inalienable except by ordinance. *City of Beaumont v. Moore,* 146 Tex. 46, 202 S.W.2d 448, 452 (1947); *City of San Antonio v. Guido Bros.* 460 S.W.2d 155, 164–165 (Tex.Civ. App.—Beaumont 1970, writ ref'd n.r.e.).

*City of Corpus Christi v. Gregg,* 155 Tex. 537, 289 S.W.2d 746 (1956), *City of Crystal City v. Crystal City C.C.,* 486 S.W.2d 887 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.), and *City of Nederland v. Callihan,* 299 S.W.2d 380 (Tex.Civ.App.—Beaumont 1957, writ ref'd n.r.e.), cited in support of appellants' theory that the doctrine of equitable estoppel may run against a municipality, involved official City action; i.e., ordinance approved leases and contract. They did not involve actions affecting public safety, welfare and health.

Appellants' point of error number two is overruled.

■ In appellants' points of error number three and four appellants contend that the trial court erred in submitting Special Issues No. 10 and No. 11 to the jury over appellants' objection, that the matter submitted was a matter of law, not a matter of fact to be determined by the jury. We find that the matter submitted was a question of law. Special Issues No. 10 and No. 11 required the jury to find whether or not the appellants' 1979 permit expired under their own terms in 1982 and appellants' 1983 permit expired under its own terms in 1985, respectively.

Ordinarily, a trial court should not submit an issue to the jury which requires it to determine a question of law. *See e.g. Knutson v. Ripson,* 354 S.W.2d 575 (Tex. 1962); *Ergon, Inc. v. Dean,* 649 S.W.2d 772 (Tex.App.—Austin, 1983, no writ); *Wirtz v. Orr,* 533 S.W.2d 468 (Tex.Civ.App.—Eastland, 1976, writ ref'd n.r.e.). A jury may not be called upon to construe the legal effect of an instrument. *Wirtz* at 471. In the instant case, the jury, in Special Issues No. 10 and No. 11 was called upon to construe the legal effect of the provisions of the ordinances passed and the permits issued thereunder.

Appellants' property rights, such as they may have been as a result of the issuance at the 1979 and 1983 permits, were defined and limited by those instruments. The permits were not ambiguous and we find as a matter of law that appellants 1979 and 1983 permits did expire under their own terms in 1982 and 1985 respectively. The trial court could have found these issues against appellants as a matter of law.

■ The submission of a question at law is harmless unless there is a showing of extraneous prejudice. *Lede v. Aycock,* 630 S.W.2d 669 (Tex.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). In the instant case we find that there is no showing of extraneous prejudice. Consequentially, the error is harmless and should not be a basis for reversal on appeal. Tex.R.App.P. 81(b)(1).

In appellants' point of error number five, appellants' claim that because the trial judge granted the request by the City to submit Special Issue No. 11, appellants were required to request that Special Issue No. 12 be submitted to the jury as well. Appellants contend that the answer by the jury of "No" to Special Issue No. 12, inquiring as to whether the City renewed appellants' permits in 1985, is not supported by the evidence.

■ While there is evidence that city council *extended* appellants' 1983 permit, there is not evidence that the city council *renewed* the 1983 permit and the jury could not have found otherwise. The provisions contained in the June 6, 1985, ordinance did not apply to appellants. On June 20th city council extended the appellants permit under the 1983 ordinance. It did not grant any permit pursuant to the June 6th ordinance until June 27th.

Appellants' point of error number five is overruled.

In appellants' point of error number eight, appellants contend that the judgment should be reversed as the trial court erred

in failing to grant appellant's motion for a new trial due to jury misconduct.

"Misconduct of the jury" is a legal phrase meaning an unlawful or unauthorized act done by the jury, or any of its members, in connection with the trial but it does not necessarily imply an evil or corrupt motive on the part of the jury or the prevailing party. *Sidran v. West. Text. Prod. Co.*, 258 S.W.2d 830, 832 (Tex.Civ. App.—Dallas, 1953) rev'd on other grounds 153 Tex. 21, 262 S.W.2d 942 (1953).

■ In the instant case the trial judge advised counsel of the jury incident the morning after it occurred. The judge had asked someone in the City Attorney's Office to find a juror a cab, and to find out what it cost so that the court could reimburse her.

The problem had arisen as a result of the trial running after 5:00 o'clock p.m., this having resulted in the juror missing her bus. Admonishment for the trial running late was directed at counsel for both sides. It did not take place in the presence of the jury. Counsel for appellants made no objection at the time of the incident or before the verdict.

Appellants cite no authority to support the contention that a trial judge's failure to allow sufficient time to render objections will excuse not making one. Plaintiffs could and should have moved for a mistrial promptly. 57 TEX.JUR.2d *Trial* Sec. 384 (1964). They had three full days to voice their objections before the verdict was returned. We believe that it would be wantonly unfair to allow a litigant to take his chances with the jury and later complain of misconduct when he is unhappy with the result. A party may not speculate on the result of a verdict and then for the first time complain of jury misconduct. *Colls v. Price's Creameries*, 244 S.W.2d 900 (Tex. Civ.App.—El Paso 1951, writ ref'd n.r.e.).

Appellants point of error number eight is overruled.

The judgment is affirmed.