Laura **MERCADO** and Penny Litzman, Individually and on Behalf of Norma Culberson, Deceased, Appellants,

v.

**WARNER–LAMBERT COMPANY,** Appellee.

No. 01–02–00353–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 8, 2003.

Rand Patrick Nolen, George M. Fleming, Sylvia Davidow, Fleming & Associates, L.L.P., Michael O'Brien, Houston, TX, for Appellants.

Jack E. Urquhart, Beirne, Maynard & Parson, L.L.P., Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices NUCHIA and HANKS.

## OPINION

GEORGE C. HANKS, JR., Justice.

In one point of error, the appellants, Laura Mercado and Penny Litzman, individually and on behalf of Norma Culberson, deceased, argue that the trial court erred in not granting their motion for new trial, which was based on jury misconduct. We affirm.

## Background

Laura Mercado and Penny Litzman (collectively, "Mercado") brought wrongful death and survival actions against Warner–Lambert Company, appellee, for damages arising from the death of Mercado's mother, Norma Culberson. After a three-week trial, the jury returned a 10–2 verdict, finding Warner–Lambert was not negligent in causing Culberson's death. The jury also found that the diabetes drug, Rezulin, manufactured by Warner–Lambert, was neither defective in its design nor in the way it was marketed. The trial court rendered judgment on the verdict, and Mercado filed a motion for new trial alleging, among other things, juror misconduct.

The trial court held an evidentiary hearing on Mercado's motion for new trial. In support of her motion addressing jury misconduct, Mercado submitted three affidavits—one affidavit from Rand Nolen, Mercado's attorney; one from a private investigator, James W. Dunbar; and one from juror Ralph Martinez.

Mercado's trial counsel, Rand Nolen, and Mercado's private investigator, James W. Dunbar, both submitted affidavits concerning alleged contact between jurors and shadow jurors.[1] On appeal, Mercado, however, concedes that the majority of these contacts "did not amount to jury misconduct." She only complains of the contact with juror Ralph Martinez.

Dunbar's affidavit referenced an interview he conducted over the telephone with Martinez. Martinez told Dunbar that, during a smoke break, a man approached him and asked for a cigarette. The same man asked Martinez for a quarter. Dun-

bar decided the man was a shadow juror. Martinez's affidavit corroborated this statement. In the affidavit, Martinez testified that there was a man who attended trial almost every day and would stand with the other jurors during smoke breaks. Martinez recalled that on one occasion, this man asked for a cigarette and then a quarter for a soft drink. Martinez obliged.

Martinez testified during the evidentiary hearing that, at the time he was approached by the man, Martinez did not know the man had been hired by one of the law firms. In fact, Martinez testified he thought the man was part of Mercado's family because he often sat behind Mercado at trial. He further testified that he and the man never discussed the case.

Also at the evidentiary hearing, Jack Urquhart, lead counsel for Warner–Lambert, admitted Warner–Lambert had hired a third party to hire shadow jurors, and that, based on Martinez's description, the young man "probably was one of the shadow jurors." Urquhart testified, however, that he did not know the names of the shadow jurors and that the shadow jurors did not even know which party had hired them.

During the lengthy and apparently impassioned argument by counsel at the conclusion of the hearing, the trial court stated, "Regardless of how I rule today, ... I want the ruling to leave the courtroom today with the impression that you do not ever mess around with a jury." The trial court ultimately denied the motion for new trial.

## Jury Misconduct

In her sole point of error, Mercado argues that the trial court abused its discre-

---

1. A "shadow juror" is defined as follows:

   A group of mock jurors paid to observe a trial and report their reactions to a jury consultant hired by one of the litigants. The shadow jurors, who are matched as closely as possible to the real jurors, provide counsel with information about the jury's likely reactions to the trial. Also termed phantom jury.

   See BLACK'S LAW DICTIONARY 861 (7th ed. 1999).

tion by failing to grant a new trial based upon jury misconduct because the undisputed evidence establishes an exchange of favors between a juror and a shadow juror working for Warner–Lambert and additional prohibited contacts between the jurors and shadow jurors.[2]

### Standard of Review

We will reverse the trial court's ruling on a motion for new trial based on jury misconduct only upon a showing of abuse of discretion. *Pharo v. Chambers County,* 893 S.W.2d 264, 266 (Tex.App.-Houston [1st Dist.] 1995), *aff'd,* 922 S.W.2d 945, 947 (Tex.1996). An abuse of discretion will be found when the trial court's ruling is arbitrary, unreasonable, or without reference to guiding principles. *Goode v. Shoukfeh,* 943 S.W.2d 441, 446 (Tex. 1997). Because the trial court did not render findings of fact or conclusions of law, we must assume that all findings support the judgment. *Id.* It is apparent from a review of the record that the parties do not dispute that the contacts between the shadow juror and Juror Martinez occurred.

### Waiver

Mercado contends that the alleged juror misconduct entitled her to a new trial. Warner–Lambert urges the Court to find that Mercado waived her complaint of juror misconduct because Mercado's attorneys observed the conversation between the shadow juror and the juror, but failed to move for mistrial. *See Alamo Carriage Serv., Inc. v. San Antonio,* 768 S.W.2d 937,

943 (Tex.App.-San Antonio 1989, no writ). Warner–Lambert's waiver argument does not address Mercado's point of error which focuses *only* on the shadow juror's solicitation of a cigarette and money from Juror Martinez.[3] Neither of these exchanges was observed by Mercado's counsel; therefore, she has not waived her right to complain of this alleged jury misconduct.

### Special Favors Rule

Traditionally, juror misconduct will warrant a new trial if the moving party establishes the misconduct (1) occurred, (2) was material, and (3) probably caused injury. *See* Tex.R. Civ. P. 327(a); *Golden Eagle Archery, Inc. v. Jackson,* 24 S.W.3d 362, 372 (Tex.2000). In this case, however, Mercado suggests that, because the shadow juror's request for a cigarette and a quarter constitutes improper exchanges of favors, Mercado is not required to prove probable injury. Rather, Mercado encourages the Court to presume injury. Texas courts recognize that inferences of prejudice and unfairness from an overt act directed at the jury may be so highly prejudicial that the burden of establishing harm is met with nothing more. *Tex. Employ. Ins. Assoc. v. McCaslin,* 159 Tex. 273, 317 S.W.2d 916, 921 (1958).

In *McCaslin,* the plaintiff sought out a juror and engaged the juror in a conversation, which concluded with the plaintiff's request to "be sure and do all you can to help me." *Id.* at 918. The court recognized that such requests make it "difficult and often impossible for [a] juror to maintain an impartial attitude as between the liti-

---

**2.** The admonitory instructions given to juries include the statement that the jurors should not accept from, *nor give to,* any of the lawyers, the witnesses, the parties, or any other person who might be connected with or interested in the case, favors however slight, such as rides, food, or refreshments. Tex.R. Civ. P. 226a.

**3.** In her original appellate brief, Mercado references the cumulative effect of the additional jury misconduct. In her reply brief, however, Mercado states that "it is only this conduct [the cigarette and quarter exchange], not simply 'casual greeting[s],' to which Appellants object."

gating parties." *Id.* at 920. The court concluded that plaintiff's overt act was probable prejudice as a matter of law. *Id.* at 921.

In every case cited by Mercado, the juror was aware of the solicitor's relationship to the party. *See e.g., McCaslin,* 317 S.W.2d at 918 (plaintiff asked juror "to do all you can to help me"); *Texas Milk Prods. Co. v. Birtcher,* 138 Tex. 178, 157 S.W.2d 633, 636 (1941) (plaintiff bought a juror a soft drink); *Albers v. San Antonio & A.P. Ry.,* 36 Tex.Civ.App. 186, 81 S.W. 828, 829 (1904) (juror and attorney spent the night at a witness's house); *Gulf, C. & S.F. Ry. Co. v. Matthews,* 28 Tex.Civ.App. 92, 66 S.W. 588, 592 (1902) (plaintiff's nephew bought juror dinner, but juror bought cigars; such conduct was reasonably calculated to affect the verdict); *Marshall v. Watson,* 16 Tex.Civ.App. 127, 40 S.W. 352, 352 (1897) (plaintiff took two jurors to dinner during trial); *TEIA v. Moore,* 549 S.W.2d 37, 39 (Tex.Civ.App.-El Paso 1977, no writ) (no reversible error because jurors did not drink coffee supplied by attorney); *TEIA v. Brooks,* 414 S.W.2d 945, 946 (Tex.Civ.App.-Beaumont 1967, no writ) (party drove juror home); *Occidental Life Ins. Co. v. Duncan,* 404 S.W.2d 52, 53 (Tex.Civ.App.-San Antonio 1966, writ ref'd n.r.e.) (party asked juror for aspirin); *Cloudt v. Hutcherson,* 175 S.W.2d 643, 650 (Tex.Civ.App.-El Paso 1943, writ ref'd w.o.m.) (several jurors played golf with one of the attorneys), overruled on other grounds by *Stevens v. Travelers Ins., Co.,* 563 S.W.2d 223 (Tex. 1978); *Campbell v. Struve,* 30 S.W.2d 344, 347 (Tex.Civ.App.-San Antonio 1930, writ ref'd) (attorney drove juror home).

■ The presumption of harm established in *McCaslin* is rebuttable. Here, the trial court conducted an evidentiary hearing during which the trial court was able to evaluate the severity of the alleged jury misconduct and to determine what, if any, harm resulted therefrom. During the hearing, juror Martinez testified that the misconduct was limited to the shadow juror's request for a cigarette and a quarter. Martinez testified that he did not know the shadow juror was associated with either party, but thought he might be associated with Mercado because he was sitting on her side of the courtroom. Also, Martinez testified that no one had attempted to discuss the case with him outside the jury's deliberations. These facts do not rise to the high standard set forth in *McCaslin;* we will not presume injury.

■ Clearly, the intent of the special favors rule is to presume harm when favors have been exchanged. For example, even if they did not discuss the case during dinner, it would be presumed harmful for a party to take a juror to dinner. Over 100 years ago, the Texas Supreme Court stated that "jurors and parties should keep strictly aloof from each other pending the trial, and, if they do not, but meet under circumstances from which injury to the other party may be reasonably apprehended, a verdict for the party engaging in the intercourse with the juror cannot be sustained." *Matthews,* 66 S.W. at 592. This is obviously an effort to avoid situations where the juror testifies he was not influenced, but it is impossible to prove if he was subconsciously influenced.

These are simply not the facts in this case. The contact by the shadow juror did not rise to the level of impropriety found in the cases cited by Mercado. Furthermore, neither the shadow juror nor the juror knew with whom the shadow juror was affiliated. As such, there could be no conscious or subconscious influence. The trial court did not abuse its discretion when it denied Mercado's motion for new trial.

We overrule Mercado's sole point of error.

We affirm the judgment.

