

# NUMBER 13-17-00594-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI–EDINBURG

UNIT DRILLING COMPANY,                                                    Appellant,

v.

MICHAEL GILMORE,                                                          Appellee.

## On appeal from the County Court at Law No. 3
## of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Perkes
Memorandum Opinion by Justice Longoria**

Appellant Unit Drilling Company (Unit) appeals a judgment rendered in favor of

appellee Michael Gilmore.  Unit argues that the trial court erred in denying its motion for

new trial based on jury misconduct.[1]  We reverse and remand.

---

[1] Unit raises six issues on appeal.  We only address this issue because it is dispositive.  *See* TEX.

# I.   BACKGROUND

Gilmore, a certified technician for Accurate Valve Services (Accurate), was called out to one of Unit's oilfield sites on September 13, 2011, to repair a seal on a blowout preventer.[2]  Gilmore testified he had worked with Unit on over fifty occasions, and each time, Unit provided Gilmore with a forklift and pallet to hoist him up to the site requiring repairs.  On this particular day, Gilmore was "boomed out"—i.e., lifted up by the forklift arms while standing on a pallet—by Unit employee and certified forklift operator Rolando Luna.  Luna testified he was aware that transporting Gilmore on the forklift went against his training and Unit's safety protocols.  Luna also testified that prior to this incident with Gilmore, he had been reprimanded by supervisors for improperly using the forklift to carry people.  Luna testified he did not think Unit supervisor Jerry Chaney, who was on site, saw him use the forklift to raise Gilmore.

On the other hand, according to Gilmore, Chaney was present for the entire ordeal.  Gilmore testified that Chaney directed Luna to back up the forklift—a command that Luna testified he heard but could not attribute to Chaney.  As Luna backed up the forklift, he did not check the area for potential hazards, and there was no spotter in place as required by Unit's safety procedures.  The forklift backed over a cable that was stretched across the ground.  The cable, which became wrapped in the forklift's tire, connected to a nearby pulley.  The cable broke, sending the pulley flying toward Gilmore.  The pulley struck Gilmore's right hand, causing injury.

---

R. APP. P. 47.1.

[2] According to Unit employees, a blowout preventer is designed to keep formation pressures below surface level contained or encased.  Unit was not certified to make repairs, so Unit contracted with Accurate, which sent Gilmore.

Vicente Lopez testified that, although he was the rig manager responsible for overseeing daily rig operations, his view of Gilmore was blocked by other machinery at the time, and he did not witness the accident. Unlike Lopez, Chaney stated a nearby structure only partially obscured his sight. Further, contrary to Gilmore and Luna, Chaney testified he witnessed Gilmore moving forward instead of backward: "I see [Gilmore] in a forward motion in this area, and I see a forklift tire, and I see something strike [Gilmore's] hand as he's holding himself, he's stabilizing himself, he's looking forward, and then I see something hit his hand." Chaney denied seeing Gilmore on the forklift prior to the accident.

Gilmore underwent surgery the following day for a crush injury to the fourth metacarpal bone on his right hand. Gilmore returned to work with Accurate in December 2011 and worked for the company until he was laid off in March 2013. Three years after his September 2011 injury, Gilmore was diagnosed with complex regional pain syndrome.[3] Gilmore then underwent a trial implantation for a spinal cord stimulator in December 2015.

Experts presented at trial fervently disputed the level of pain Gilmore suffered and the extent his injuries precluded him from working. All the while, Unit's safety procedures went uncontested: all forklift operators were certified; forklift employees were recertified in forklift operations every one to two years; Unit held multiple safety meetings each day; a job safety analysis (JSA) was required before working with third parties; Unit prohibited individuals from riding forklifts on the side, forks, and in the cab; Unit employees were taught that misuse of forklifts could cause serious injury or death; spotters were required

---

[3] Experts at trial described the disorder as a neurological injury related to an autonomic dysfunction hyperactivity or hypersensitivity.

before moving forklifts; and written copies of Unit's safety protocols were provided to each employee for daily use. Additionally, Chaney testified Luna failed to follow multiple Unit procedures on the day of Gilmore's accident.

[Chaney]:    Nobody should be allowed to ride on the forklift but the operator himself.

[Counsel]:   Did Mr. Luna fail to follow that procedure on September 13 of 2011?

[Chaney]:    Yes, he did.

[Counsel]:   Was one of the procedures to make sure that there were no obstructions in the path of the forklift?

[Chaney]:    Yes.

[Counsel]:   Did Mr. Luna fail to follow that procedure?

[Chaney]:    Yes.

[Counsel]:   Was one of the procedures to conduct a job safety analysis JSA for the task to be performed?

[Chaney]:    Yes.

[Counsel]:   And to your knowledge, was a JSA performed that day prior to the task that was about to be performed before the accident?

[Chaney]:    I do not remember seeing a JSA.

The nearly two-week trial concluded on April 28, 2017, with a jury awarding Gilmore $1,025,000 in actual damages[4] and $8,000,000 in exemplary damages. The trial court applied a statutory cap,[5] reducing Gilmore's judgment against Unit to $943,750 in actual damages and $1,885,000 in exemplary damages, plus pre-judgment interest.

---

[4] The actual damages award comprised $575,000 for past damages and $450,000 for future loss of earning capacity. The jury did not award any damages for future pain, mental anguish, disfigurement, impairment, or medical expenses.

4

After the jury's verdict had been received by the judge and the jury had been dismissed, Unit spoke with the jury. Unit was informed that the jury received an unredacted insurance certificate in the jury room. The insurance certificate reflected that Unit had $9,000,000 in insurance coverage. Unit moved for a mistrial and a new trial, arguing there was unauthorized conduct and outside influence causing substantial harm. Attached to its motion, Unit included affidavits of jurors regarding the jury's consideration of the insurance certificate. Unit also sought to elicit juror testimony in support of its motion. In his opposition to Unit's motion for mistrial, Gilmore also opposed Unit's request to elicit juror testimony and moved to quash the affidavits of the jurors. On August 16, 2017, the trial court granted Gilmore's motion to quash the juror affidavits and denied Unit's motion to elicit juror testimony and its motion for mistrial.

Unit sought emergency reconsideration and filed a motion for new trial. Reconsideration was granted and the trial court set aside its August 16 order. A hearing was set and Unit subpoenaed witnesses to appear. Prior to the hearing, the trial court *sua sponte* quashed the subpoenas. Unit requested to proceed with an evidentiary hearing, which was denied. The trial court denied Unit's motion for mistrial and motion for new trial.

## II. JURY MISCONDUCT

By its first issue, Unit argues that the trial court erred in denying its motion for mistrial because the jury improperly considered an insurance certificate. "'Misconduct of the jury' is a legal phrase meaning an unlawful or unauthorized act done by the jury or any of its members in connection with the trial. . . . It does not necessarily imply an evil

---

[5] TEX. CIV. PRAC. & REM. CODE ANN. § 41.008.

5

or corrupt motive on the part of the jury or the prevailing party." *City of Houston v. Simon*, 580 S.W.2d 667, 668 (Tex. App.—Houston [14th Dist.] 1979, no writ) (quoting *Sidran v. W.Textile Prods. Co.*, 258 S.W.2d 830, 832 (Tex. App.—Dallas 1953) *rev'd on other grounds*, 262 S.W.2d 942 (1954)).

To obtain a new trial based on jury misconduct, the moving party must show that (1) misconduct occurred, (2) it was material, and (3) the party probably suffered injury as a result. *Redinger v. Living, Inc.,* 689 S.W.2d 415, 419 (Tex. 1985); *Am. Gen. Fire & Cas. Co. v. McInnis Book Store, Inc.*, 860 S.W.2d 484, 486–87 (Tex. App.—Corpus Christi–Edinburg 1993, no writ); *Perry v. Safeco Ins. Co.,* 821 S.W.2d 279, 280 (Tex. App.—Houston [1st Dist.] 1991, writ denied). The movant bears the burden of presenting evidence substantiating fact claims necessary to entitle the movant to relief. *Cocke v. Saks,* 776 S.W.2d 788, 790 (Tex. App.—Corpus Christi–Edinburg 1989, writ denied)). The motion must also be supported by a juror's affidavit alleging outside influence. *See Editorial Caballero, S.A. de C.V. v. Playboy Enters., Inc.*, 359 S.W.3d 318, 324 (Tex. App.—Corpus Christi–Edinburg 2012, pet. denied) (citing *Weaver v. Westchester Fire Ins. Co.*, 739 S.W.2d 23, 24 (Tex. 1987) (per curiam)). To determine whether the misconduct probably resulted in injury, we evaluate the "record as a whole." *Id*.; *see In re Whataburger Rests. LP*, 429 S.W.3d 597, 599 (Tex. 2014) (orig. proceeding) (citing *Fountain v. Ferguson*, 441 S.W.2d 506, 508–09 (Tex. 1969)) (broadly construing the phrase "record as a whole" to include "any and all parts of the record which may throw light on the question of injury"); *see also* TEX. R. CIV. P. 327(a).

6

Unit complains that the jury received evidence of its liability insurance. During trial, Gilmore offered an exhibit which contained a statement that Unit had $9,000,000 in liability insurance, prompting a bench conference.

[Gilmore]: Did you ever see the contract between Blackbrush Oil & Gas, LLP, and Unit Texas Drilling LLC?

[Witness]: It's possible.

[Gilmore]: Your Honor, we would offer Plaintiff's Exhibit No. 51.

[Unit]: And may we approach just very quickly, Your Honor?

[The Court]: Yes.

[Unit]: Your Honor, we have no objection, but there are a number of provisions that need to be redacted.

[Gilmore]: Yeah, I'm not gonna publish it.

[The Court]: Okay.

[Gilmore]: Your Honor, we offer Plaintiff's Exhibit 51.

[Unit]: No objection, Your Honor.

[The Court]: It would be admitted.

When the exhibit went to the jury room, it had not been redacted.

Gilmore argues that Unit failed to make a specific objection and the record does not show that the trial court knew the nature of the information that was to be redacted. Unit responds that the trial court entered an order prior to trial excluding any reference to Unit being protected by liability insurance. While the pretrial order does not preserve error as to the admission of the document, *see Tex. Dep't of Transp. v. Pate*, 170 S.W.3d 840, 850 (Tex. App.—Texarkana 2005, pet. denied), the trial court made clear during the hearing on Unit's motion for new trial that its understanding was that the insurance

information was to be redacted "at the end of trial before it reached the jury room." Accordingly, we find that the trial court was on notice of the information expected to be redacted. *See McInnis Book Store*, 860 S.W.2d at 488.

Texas Rule of Civil Procedure 327 sets out the standard for the granting of a new trial when jury misconduct is alleged as a basis therefor:

> Where the ground of the motion is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury or that they received other testimony, or that a juror gave an erroneous or incorrect answer on voir dire examination, the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved, or the testimony received, or the communication made, or the erroneous or incorrect answer on voir dire examination, be material, and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party.

TEX. R. CIV. P. 327. The rule places the burden on the movant to establish, to the satisfaction of the court: that the misconduct occurred, that it was material, and that it reasonably appears from the record as a whole "that injury probably resulted" to him. *Simon*, 580 S.W.2d at 669 (citing *St. Louis Sw. Railway Co. v. Gregory*, 387 S.W.2d 27, 31 (Tex. 1965)).

In *McInnis Book Store*, the appellant insurance company complained that the jury received evidence that the appellee book store owner was acquitted of arson in connection with the fire that damaged the book store. *Id*. at 487. When appellee attempted to admit the complained-of exhibit, a bench conference was held, wherein the exhibit was admitted subject to being sanitized of the complained-of portions. *Id*. Ultimately, the exhibit was not redacted and went to the jury room. *Id*. In that case, this Court held that the offering party had the responsibility to sanitize the document prior to submitting it to the jury. *Id*. However, we found that the appellant in *McInnis Book Store*

8

did not meet its burden to demonstrate that it suffered harm as a result of the admission of the complained-of information, and therefore, the trial court did not abuse its discretion in denying the motion for new trial. *Id*.

Similarly, in *Simon*, a copy of the court's charge with the appellee's attorney's notes on it was inadvertently admitted into the jury room with the exhibits. 580 S.W.2d at 668. The court of appeals noted that it did not believe there was "any intentional wrongdoing on the part of anyone connected with [the] trial," but that the extra copy was just taken in along with the exhibits. *Id*. In that case, appellant moved for a mistrial on the basis of jury misconduct. *Id*. (citing TEX. R. CIV. P. 281 ("Where only part of a paper has been read in evidence, the jury shall not take the same with them, unless the part so read to them is detached from that which was excluded.")). The court reviewed the record and determined that the jury's answers to the damages special issues "differed significantly from the amounts written thereon by the appellee's attorney" and therefore, the appellant did not show that probable injury resulted from the jury receiving a copy of the charge with the attorney's notes on it. *Id*.

Here, as in *McInnis* and *Simon*, the jury received a piece of information that was not admitted into evidence, nor intended for their consideration, specifically that Unit had $9,000,000 in liability insurance coverage. We note that we do not believe that either party intended for the jury to receive this information, nor do we believe that the jury viewed the information knowing that they should not have; however, the inadvertent admission of the insurance information was misconduct. *See Barrington v. Duncan*, 169 S.W.2d 462, 465 (Tex. 1943) (finding that misconduct was conclusively shown where jurors testified that the question of insurance was mentioned during deliberations). The

9

question following an affirmative finding of misconduct is whether the misconduct requires reversal. *See id.* at 464.

Four jurors filed affidavits and swore that: "[T]he jury considered the $9 million in insurance when reaching a decision to award $8 million in punitive damages." "This court takes judicial knowledge of the fact that a jury is more apt to render a judgment against a defendant, and for a larger amount, if it knows that the defendant is protected by insurance." *Id.* at 465 (citing *Kuntz v. Spence*, 67 S.W.2d 254 (Tex. Comm'n App. 1934)). Here, the jury admitted that there was a discussion of the insurance coverage and that it was used to determine the amount of damages, accordingly, the misconduct was material and probably caused Unit to suffer injury. *See id.*; *see also Strange v. Treasure City*, 608 S.W.2d 604, 609 (Tex. 1980) (holding that jury's misconduct by twice casually mentioning insurance did not warrant new trial, where no amount of insurance coverage was discussed and there was no testimony that the amount of verdict was increased after mention of insurance). Accordingly, the trial court abused its discretion in denying Unit's motion for new trial. Unit's first issue is sustained.

## III.  CONCLUSION

We reverse the judgment of the trial court and remand for a new trial.

NORA L. LONGORIA
Justice

Concurring Memorandum Opinion by Justice Perkes.

Delivered and filed the
10th day of October, 2019.