ACCEPTED
04-14-00124-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
1/9/2015 9:52:25 PM
KEITH HOTTLE
CLERK

NO. 04-14-00124-CV

IN THE COURT OF APPEALS OF TEXAS
FOURTH APPELLATE DISTRICT
AT SAN ANTONIO

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

01/9/2015 9:52:25 PM

KEITH E. HOTTLE
Clerk

\*\*\*\*\*

**WESTFREIGHT SYSTEMS INC.**

**v.**

**JOHN MICHAEL HEUSTON, individually and as dependent administrator of the ESTATE OF JUANA GARZA, deceased, and GERONIMO RODRIGUEZ, individually**

\*\*\*\*\*

# Reply and Cross-Appellee's Brief of Westfreight Systems Inc.

\*\*\*\*\*

On Appeal from the 79th District Court, Jim Wells County, Texas
Hon. Richard Terrell, Judge
Cause No. 12-03-50966-CV

\*\*\*\*\*

Brian Miller
State Bar No. 24002607

ROYSTON RAYZOR
VICKERY & WILLIAMS L.L.P.
Frost Bank Plaza, Suite 1300
802 N. Carancahua St.
Corpus Christi, TX 78401
Tel. No. (361) 884-8808
Fax No. (361) 884-7261
E-mail: brian.miller@roystonlaw.com

*Lead appellate counsel for appellant*
*Westfreight Systems Inc.*

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ............................................................................ iii

ISSUES PRESENTED ................................................................................ vi

SUMMARY OF REPLY AND CROSS-APPELLEE ARGUMENTS ......... 1

ARGUMENT .................................................................................................. 2

    I. Plaintiffs did not provide legally sufficient evidence of proximate
    cause. ...................................................................................................... 2

        A. *Plaintiffs apply an incorrect definition of "cause in fact."* ................. 2

        B. *Westfreight did not admit to proximate cause.* ................................... 3

        C. *Plaintiffs' experts did not provide competent evidence of proximate
        cause.* .................................................................................................. 4

            1. An objection to admissibility is not a prerequisite when opinion
            testimony is conclusory or speculative. ............................................... 4

            2. Critical to Plaintiffs' theory is opinion testimony that Garza
            could not perceive the rig's presence ahead of her ............................. 9

            3. Plaintiffs offered only conclusory and speculative opinion
            testimony that the rig was not sufficiently visible to Garza. ............. 14

        D. *No other evidence shows that Westfreight's conduct created more
        than a condition necessary for the collision to occur.* ........................... 18

        E. *Plaintiffs have not ruled out other plausible explanations, such as
        driver inattention, as the sole or superseding cause of the accident.* ..... 23

        F. *The foreseeability component is also absent.* ................................... 24

    II. Plaintiffs are not entitled to a new trial. ............................................... 26

        A. *Plaintiffs' new trial complaint is moot because the evidence does not
        support Westfreight's liability.* ............................................................ 26

i

*B. A new trial may not be granted for factual insufficiency of the evidence.* ......................................................................... 27

    1. Any factual insufficiency point is waived by inadequate briefing. ............................................................................... 27

    2. The evidence is factually sufficient to support the jury's negligence and apportionment findings against Garza. ..................... 29

*C. A new trial may not be granted for improper witness coaching.* ....... 30

    1. Plaintiffs did not preserve this issue in the trial court. .................. 30

    2. Plaintiffs' inadequate briefing waived the issue. ........................... 31

    3. The record does not show that any impropriety occurred. ............. 32

    4. Even assuming that improper coaching occurred, Plaintiffs have not shown that the trial court abused its discretion by denying a new trial. ...................................................................... 33

CONCLUSION AND PRAYER FOR RELIEF ........................................... 35

CERTIFICATE OF SERVICE .................................................................. 37

CERTIFICATE OF WORD-COUNT COMPLIANCE ............................... 38

# INDEX OF AUTHORITIES

**Cases**

*Abdelnour v. Mid Natl. Holdings Inc.*, 190 S.W.3d 237 (Tex. App. – Houston [1st Dist.] 2006, no pet.) ............................................................. 28

*Alamo Carriage Serv. Inc. v. City of San Antonio*, 768 S.W.2d 937 (Tex. App. – San Antonio 1989, no writ) ...................................................... 30

*Bell v. Campbell*, 434 S.W.2d 117 (Tex. 1968) .................................. 12-14, 18

*Cain v. Bain*, 709 S.W.2d 175 (Tex. 1986) ................................................. 29

*City of Kemah v. Vela*, 149 S.W.3d 199 (Tex. App. – Houston [14th Dist.] 2004, pet. den.) .................................................................... 12, 18

*City of San Antonio v. Pollock*, 284 S.W.3d 809 (Tex. 2009) ..... 5, 7-8, 14, 17

*Coastal Transport Co. Inc. v. Crown Cent. Petrol. Corp.*, 136 S.W.3d 227 (Tex. 2004) ........................................................................... 4-8

*ERI Consulting Engineers Inc. v. Swinnea*, 318 S.W.3d 867 (Tex. 2010)... 28

*Erie Ins. Exch. v. U.S.*, 115 F.Supp.2d 493 (M.D. Pa. 2000) ................. 13, 18

*Fitzsimmons v. Brake Check Inc.*, 832 S.W.2d 446 (Tex. App. – Houston [14th Dist.] 1992, no writ) .................................................................. 19

*Fort Worth & Denver City Railway Co. v. Garrett*, 28 S.W.2d 301 (Tex. Civ. App. 1930, writ ref'd) ...................................................................... 12

*Gammill v. Jack Williams Chevrolet Inc.*, 972 S.W.2d 713 (Tex. 1998) ....... 4

*Garza v. Garza*, No. 4-11-310-CV, 2013 WL 749727 (Tex. App. – San Antonio Feb. 27, 2013, no pet.) ............................................................. 29

*In re Toyota Motor Sales U.S.A. Inc.*, 407 S.W.3d 746 (Tex. 2013) ........... 31

*In re United Scaffolding Inc.*, 377 S.W.3d 685 (Tex. 2012) ....................... 30

*Jackson v. Williams Brothers Construction Co.*, 364 S.W.3d 317 (Tex. App. – Houston [1st Dist.] 2011, pet. den.) ........................................................ 28

*Jelinek v. Casas*, 328 S.W.3d 526 (Tex. 2010) ............................................. 16

*Marathon Corp. v. Pitzner*, 106 S.W.3d 724 (Tex. 2003)............................. 2

*Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402 (Tex. 1998) ................... 6

*Merrell Dow Pharmaceuticals Inc. v. Havner*, 953 S.W.2d 706 (Tex. 1997) ................................................................................................................. 4

*Shupe v. Lingafelter*, 192 S.W.3d 577 (Tex. 2006) ...................................... 27

*Ski River Development Inc. v. McCalla*, 167 S.W.3d 121 (Tex. App. – Waco 2005, pet. den.) .................................................................. 34

*Teter v. Comm'n for Lawyer Discipline*, 261 S.W.3d 796 (Tex. App. – Dallas 2008, no pet.)................................................................. 28

*Tex. & New Orleans R. Co. v. Compton*, 136 S.W.2d 1113 (Tex. 1940)..... 21

*Tex. Elec. Co-op. v. Dillard*, 171 S.W.3d 201 (Tex. App. – Tyler 2005, no pet.)................................................................................................ 18

*Union Pump Co. v. Allbritton*, 898 S.W.2d 773 (Tex. 1995) ........................ 3

*Utz v. Running & Rolling Trucking Inc.*, 32 So.3d 450 (Miss. 2010) .......... 15

*Volkswagen of America Inc. v. Ramirez*, 159 S.W.3d 897 (Tex. 2004)......7-8

*Wal-Mart Stores Inc. v. Merrell*, 313 S.W.3d 837 (Tex. 2010) ................... 24

*Watts v. Watts*, 396 S.W.3d 19 (Tex. App. – San Antonio 2012, no pet.) ................................................................................................33- 34

*Whirlpool Corp. v. Camacho*, 298 S.W.3d 631 (Tex. 2009)..................... 4, 6

*Wolf v. Friedman Steel Sales Inc.*, 717 S.W.2d 669 (Tex. App. – Texarkana 1986, writ ref'd n.r.e.) ........................................................... 25

**Statutes**

TEX. CIV. PRAC. & REM. CODE §33.003 .................................................... 26

TEX. CIV. PRAC. & REM. CODE §41.001...................................................... 34

TEX. TRANSP. CODE §541.302 ................................................................ 20

TEX. TRANSP. CODE §545.415............................................................. 20

**Rules**

TEX. R. APP. P. 33.1 ....................................................................... 31

TEX. R. APP. P. 38.1 ................................................................. 28, 32

TEX. R. APP. P. 43.3 ....................................................................... 26

TEX. R. APP. P. 44.1 ....................................................................... 34

TEX. R. CIV. P. 321......................................................................... 31

TEX. R. CIV. P. 322......................................................................... 31

# ISSUES PRESENTED

Westfreight presents this issue:

> Did Plaintiffs present legally sufficient evidence of proximate causation, such that the trial court could render judgment on a jury verdict? Or was the evidence legally insufficient, requiring the rendering of a take-nothing judgment?

*Appellant's brief*, at xi.

Plaintiffs cross-appealed and present the following additional issue

(which is restated):

> Did the trial court abuse its discretion by denying Plaintiffs' motion for new trial?

*See Appellees' brief*, at viii, 47-49.

# SUMMARY OF REPLY AND CROSS-APPELLEE ARGUMENTS

The evidence of proximate cause is not legally sufficient to sustain the judgment against Westfreight Systems Inc. Essential to Plaintiffs' causation theory was opinion testimony that the Westfreight tractor-trailer rig was not sufficiently conspicuous to allow Juana "Janie" Garza to perceive its presence ahead of her. That opinion testimony, however, was conclusory and speculative and therefore incompetent to sustain a judgment. No other evidence shows that Westfreight's conduct amounted to more than a condition necessary for the collision to occur. *See below*, at 2-26.[1]

Although Plaintiffs seek a new trial by their cross-appeal, the cross-appeal is mooted by the legal insufficiency of the evidence to support Westfreight's liability. Plaintiffs nonetheless forfeited their new trial grounds by failing to preserve them in the trial court, inadequately briefing them on appeal, or both. Regardless, neither Plaintiffs' factual-sufficiency challenge nor their witness-coaching allegations show that the trial court abused its discretion by denying a new trial. *See below*, at 26-35.

---

[1] This brief uses the term "Plaintiffs" to refer to all of the plaintiffs-appellees in all of their capacities. *See Appellant's brief*, at ix fn. 1.

# ARGUMENT

## I. Plaintiffs did not provide legally sufficient evidence of proximate cause.

Westfreight's appeal challenges the legal sufficiency of Plaintiffs' proximate cause evidence. *Appellant's brief*, at xi (issues presented). "The components of proximate cause are cause in fact and foreseeability." *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003). Westfreight's opening brief explained how Plaintiffs' evidence failed to establish each component. *Appellant's brief*, at 14-38.

### A. *Plaintiffs apply an incorrect definition of "cause in fact."*

Westfreight's opening brief explained that "but for" causation is necessary – but not sufficient – to establish cause in fact. *Appellant's brief*, at 13-14. Texas uses a "substantial factor" standard for cause in fact, asking "whether the act or omission was a substantial factor in causing the injury without which the harm would not have occurred." *Marathon*, at 727.

Plaintiffs' brief never addresses "substantial factor" causation. The word "substantial" does not appear in their brief. Plaintiffs address only "but-for" causation. *See, e.g., Appellees' brief*, at 36-37 (purported admissions of "but for" causation).

Plaintiffs argue an erroneous causation standard. The law requires a closer causal relationship than mere "but for" causation. *See Appellant's*

*brief*, at 13-14 (additional discussion). "Substantial factor" causation is essential to establish that the defendant's conduct did something more than merely furnish a "condition that makes the plaintiff's injury possible." *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 776 (Tex. 1995).

Plaintiffs' exclusive focus on "but-for" causation is therefore misplaced.

### B. Westfreight did not admit to proximate cause.

Plaintiffs dedicate much of their brief to testimony about Westfreight's negligence. *See, e.g., Appellees' brief*, at 5-17. But whether Westfreight was negligent is not at issue in this appeal. *Appellant's brief*, at xi (statement of issues). Westfreight's challenge to the trial court's judgment is based on the absence of evidence to support the proximate cause element of Plaintiffs' negligence claim. *Id.*

Plaintiffs assert that Westfreight admitted "but for" causation, as if that were sufficient to establish cause in fact. *See Appellees' brief*, at 19-21, 36-37. But, as just discussed above, at 2-3, "substantial factor" causation is also an essential component of cause in fact, and Plaintiffs' brief never addresses that component.

Even as to "but for" causation, the purported admissions are not what Plaintiffs claim them to be. Plaintiffs cite and quote the testimony of

3

Westfreight safety director James Semeschuk, but nearly all of the testimony is in terms of what "could have" happened if different actions were taken. *See Appellees' brief*, at 20-21, *citing and quoting R.R. 5:274-276.*

Testimony of what "could have" happened is speculative because the testimony only identifies what is possible. *Gammill v. Jack Williams Chevrolet Inc.*, 972 S.W.2d 713, 728 (Tex. 1998) (testimony of what "could have happened" held insufficient). The burden of proof requires evidence about what was probable – that is, "more likely than not." *Merrell Dow Pharmaceuticals Inc. v. Havner*, 953 S.W.2d 706, 717 (Tex. 1997).

### C. Plaintiffs' experts did not provide competent evidence of proximate cause.

#### 1. An objection to admissibility is not a prerequisite when opinion testimony is conclusory or speculative.

Westfreight's opening brief explained that conclusory and speculative opinion testimony is "not relevant evidence" because it does not "make the existence of material facts more probable or less probable." *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 637 (Tex. 2009), *quoted in Appellant's brief*, at 11 (providing additional discussion). Such testimony is "incompetent evidence" and "cannot support a judgment." *Coastal Transport Co. Inc. v. Crown Cent. Petrol. Corp.*, 136 S.W.3d 227, 232 (Tex. 2004).

Westfreight's opening brief also explained that Plaintiffs relied on conclusory and speculative opinion testimony to assert that the accident happened because the Westfreight rig was not sufficiently visible to Garza. *Appellant's brief*, at 18-36. In response, Plaintiffs claim that Westfreight was required to object to the admissibility of the opinion testimony to preserve that legal sufficiency complaint. *Appellees' brief*, at 28-33. Plaintiffs are wrong.

Plaintiffs acknowledge that the Texas Supreme Court has drawn "a distinction between challenges to an expert's scientific methodology and no evidence challenges where, on the face of the record, the evidence lacked probative value." *Coastal*, at 233 (quot. omitted), *quoted in City of San Antonio v. Pollock*, 284 S.W.3d 809, 817 (Tex. 2009), *in turn quoted in Appellees' brief*, at 30. The difference is that, with a methodology challenge, "a court necessarily looks beyond what the expert said to evaluate the reliability of the expert's opinion." *Coastal*, at 233 (quot. omitted). But if "the testimony is challenged as conclusory or speculative and therefore non-probative on its face, however, there is no need to go beyond the face of the record to test its reliability." *Id.*

Westfreight's challenge is limited to the face of the record. *See Appellant's brief*, at 18-36. Westfreight challenges the sufficiency of what Plaintiffs' experts actually said.

Citing *Maritime Overseas Corp. v. Ellis*, Plaintiffs argue that allowing a legal sufficiency challenge is "unfair" and subjects them "to trial and appeal by ambush." 971 S.W.2d 402, 409-411 (Tex. 1998), *quoted in Appellees' brief*, at 29. But in *Coastal*, the Texas Supreme Court distinguished *Maritime Overseas* as a case that required an examination of evidence "beyond what the expert said." *Coastal*, at 233. The *Maritime Overseas* situation thus required a trial court to exercise "discretion in making a determination of whether the expert testimony is sufficiently reliable." *Id.*

On the other hand, whether opinion testimony is conclusory or speculative on its face is a question of law, not a matter of trial court discretion. *Id.* at 232; *Whirlpool*, at 638. The question does not require a trial court to resolve disputed predicate facts. The question is solely one of legal sufficiency of the evidence presented at trial. *Id.*

*Coastal* emphasized that "*Maritime Overseas* did not change the general rule that bare conclusions – even if unobjected to – cannot constitute

6

probative evidence," even when those conclusions come from expert witnesses. *Coastal*, at 233.

That point is underscored in *Pollock*, a case that Plaintiffs abundantly quote. *Appellees' brief*, at 30-31. *Pollock* reiterated that "a party may complain that conclusory opinions are legally insufficient evidence to support a judgment even if the party did not object to the admission of the testimony." 284 S.W.3d at 816. *Pollock* quoted extensively from *Coastal*'s discussion of the distinction between "beyond what the expert said" challenges (which require an objection) and "face of the record" challenges (which do not). *Id.* at 817, *discussing Coastal*, at 233.

*Pollock* also explained that an opinion is not sufficient merely because an expert articulates some basis for the opinion. 284 S.W.3d at 817. Thus, "even when some basis is offered for an opinion, if that basis does not, on its face, support the opinion, the opinion is still conclusory." *Id.*

*Pollock* cited *Volkswagen of America Inc. v. Ramirez* as an example. *Pollock*, at 817, *discussing Volkswagen*, 159 S.W.3d 897, 901-902 (Tex. 2004). In *Volkswagen*, the court assumed that "the expert's methodology was reliable" because "the defendant had not objected to it." *Pollock*, at 817-818, *discussing Volkswagen*, at 910-911. Nonetheless, "taking the record at

face value," the expert's opinion was conclusory because the basis for his opinion did not adequately support his opinion. *Id.*

*Pollock* also shows that an opinion may be conclusory even when an expert purports to rely on tests and studies. 284 S.W.3d at 818-820. In *Pollock*, one expert's opinions were conclusory because the record provided "no evidence whatever from which one could infer" a necessary link between test results from a well and the expert's opinions about benzene concentration in an adjacent home. *Id.* at 818-819. A second expert's opinions in *Pollock* were conclusory, even though that expert relied on published studies, because the studies' conditions were too dissimilar for the studies to support the expert's opinions. *Id.* at 819-820.

The expert opinions in *Pollock* were admitted without objection. *Id.* at 816. The lack of an objection did not preclude the determination, on appeal, that the expert opinions were conclusory and therefore incompetent to support a judgment. *Id.* at 818-820.

As in *Coastal, Volkswagen,* and *Pollock*, the challenge in this case is on the face of the trial record. *Coastal*, at 231-233; *Volkswagen*, at 910-911; *Pollock*, at 817-820. Such a legal sufficiency challenge does not require a trial court objection to admissibility. *Id.*

**2. Critical to Plaintiffs' theory is opinion testimony that Garza could not perceive the rig's presence ahead of her.**

Plaintiffs' brief does not mention that Janie Garza's minivan collided into the rear of the Westfreight rig. *See, e.g., Appellees' brief*, at 17-19 (describing the collision). As Plaintiffs' accident reconstructionist James Lock testified, the left front of Garza's minivan struck the right rear corner of the trailer. *R.R. 4:43; see also Appellant's brief*, at 3-5 (describing the collision).

Plaintiffs' brief suggests that the Westfreight rig had just "pulled out" in front of Garza's minivan when the accident occurred. *See, e.g., Appellees' brief*, at 25. Their brief suggests that the right northbound lane was free until a mere instant before the collision. *Id.* at 43.

But that is not what happened. Those suggestions blatantly contradict the record.

Plaintiffs' accident reconstructionist Lock prepared diagrams that showed the location of the rig as it backed out of the National Oilwell yard. *Pl. Exh. 242, 243*. Lock relied on physical evidence to prepare the diagrams. *R.R. 4:40*. That physical evidence included "gouge marks" in the roadway "where the van at impact was crushed downward into the pavement." *R.R. 4:40-41, 44*. That physical evidence also included police photographs that

showed fresh tire marks. *R.R. 4:44-46.* Those marks allowed him to "see exactly what the path of travel was" for the rig. *R.R. 4:44.*

Lock's diagrams show how the rig occupied the right northbound lane of Business U.S. Highway 281 during the backing process and while the rig was moving forward, up to the moment of collision. Lock explained that "the trailer was always in her [Garza's] lane." *R.R. 4:78.*

Lock's first diagram, excerpted below, shows the location of the rig when the rig stopped moving backwards:



*Pl. Exh. 242 (Appx. 29).*[2] A second diagram, excerpted below, shows the location of the rig when the collision occurred:

---

[2] "Appx." references are to the appendix to Westfreight's opening brief.



*Pl. Exh. 243 (Appx. 30).*

The rig did not suddenly move into those positions. Lock testified that the "truck was out in the road for over one minute." *R.R. 4:46; see also R.R. 4:57-58* (similar). Plaintiffs' trucking safety expert David Stopper gave a similar opinion: His re-enactment showed that it took "about a minute and 13 seconds" to back the rig and then have his spotter return from the rear of the rig to the cab. *R.R. 4:204-205.* Bailey said that backing the truck took "approximately a minute, minute-and-a-half," *R.R. 5:74-75*, and agreed with an estimate of 23 seconds to walk from the spotter position to the cab. *R.R. 5:95.*

The rig moved slowly forward. As Lock testified, a truck is "a very slow-moving vehicle" when it moves forward from a stop. *R.R. 4:82.* He estimated the rig's speed at 5 miles per hour at the moment of collision. *R.R. 4:79; see also Appellant's brief*, at 5 (collecting testimony on forward motion of rig).

Garza had a flat, straight approach to the accident site. *Appellant's brief*, at 4-5 (collecting testimony about the approach). Even assuming that a small hill affected her view, the hill was a half-mile away, and at the speed limit, she still had 25 to 30 seconds to see the rig before the collision. *Id.*

Critical to Plaintiffs' liability theory is that Garza could not realize that the rig was occupying the right northbound lane. As Westfreight's opening brief discussed, "blindside backing" did not proximately cause the accident. *Appellant's brief*, at 14-18. That process had ended, and the rig was moving forward when the collision occurred. *Id.* The result of that process was a slow-moving rig ahead of Garza.

Proximate cause is not established merely because a defendant negligently caused an obstruction on a roadway. *See id., citing, e.g., Bell v. Campbell*, 434 S.W.2d 117, 120-121 (Tex. 1968) (overturned trailer on road, no proximate cause as matter of law); *Fort Worth & Denver City Railway Co. v. Garrett*, 28 S.W.2d 301, 305 (Tex. Civ. App. 1930, writ ref'd) (rail cars blocking road, no proximate cause as matter of law). Such an obstruction ordinarily does "no more than furnish the condition" that made a collision possible. *City of Kemah v. Vela*, 149 S.W.3d 199, 204 (Tex. App. – Houston [14th Dist.] 2004, pet. den.) (collision into rear of patrol car parked

on road); *see also Bell*, at 120 (similar statement, second collision at accident site).

Approaching drivers are expected to recognize conditions on the roadway ahead and act accordingly, and they do in the overwhelming majority of situations. Even stopped vehicles on highways are "by no means an uncommon experience" but something that "any driver at any time must anticipate, whether the stopped vehicle is the result of an accident, road construction, a car stopped to permit an animal to cross, a snowstorm, intense rainfall, or any other such occasional roadway phenomenon." *Erie Ins. Exch. v. U.S.*, 115 F.Supp.2d 493, 496 (M.D. Pa. 2000). In our case, the accident scene presented additional reasons to anticipate stopped or slowed vehicles, including an intersection with another highway (FM 3376) and the driveways for several businesses, all along Garza's approach.[3]

A plaintiff must show that a roadway condition, such as a slowed or stopped vehicle, was more than a mere "condition" or "but for" cause that allowed the collision to occur. *See Appellant's brief*, at 13-14, *and above*, at 2-3, 12-13. That is true even when the defendant's negligence created the

---

[3] *See Pl. Exh. 243 (Appx. 30)* (diagram of collision site); *see also, e.g., Pl. Exh. 192, Photo No. 566 (Appx. 26)* (photograph of intersection); *Pl. Exh. 62 (Appx. 27)* (aerial photograph of scene); *Pl. Exh. 192, Photo No. 615 (Appx. 28)* (photograph showing intersection and businesses along Garza's approach to collision site).

condition. *See, e.g., Bell*, at 120 (defendants' negligence was "but for" cause but not proximate cause).

To make that additional showing, Plaintiffs offered expert testimony that the rig was not sufficiently visible to Garza. That testimony, however, was legally insufficient for that purpose. *See, e.g., Appellant's brief*, at 18-33 (discussing that testimony); *see also below*, at 14-17.

### 3. Plaintiffs offered only conclusory and speculative opinion testimony that the rig was not sufficiently visible to Garza.

Plaintiffs' trucking safety expert Stopper opined that Garza could not see that a rig was ahead of her because the rig's taillights and side lights were "basically dots in space" and meaningless to her. *R.R. 4:214; see also Appellant's brief*, at 18-19 (additional discussion). Westfreight's opening brief explained why Stopper's theory was conclusory and speculative, even though Stopper purported to base his theory on the adoption of regulations to require retroreflective tape on rigs and on two studies of accident rates. *Appellant's brief*, at 20-30.

As *Pollock* explained, an opinion can be conclusory or speculative even though an expert offers a basis for the opinion. 284 S.W.3d at 817-820. Where "the basis offered provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence,

14

regardless of whether there is no objection" at trial to the opinion's admissibility. *Id.* at 818.

Plaintiffs, in their brief, again offer the adoption of regulations and the studies as bases for Stopper's opinion. *See Appellees' brief*, at 18 (tape), 28-29 (studies). Plaintiffs say, "Reflective tape is important because both the United States and Canadian governments have determined that side lights alone are not sufficiently recognizable." *Id.*at 18. While retroreflective tape may help prevent **some** collisions, such a statement does nothing to explain **this** collision. *See Appellant's brief*, at 21 (additional discussion). Such a statement, if used as a basis for causation, would also absurdly "lead to the conclusion that in the absence of reflective tape, it is impossible for any driver to see any commercial transport tractor trailer at night." *Utz v. Running & Rolling Trucking Inc.*, 32 So.3d 450, 467 (Miss. 2010).[4]

For many years, however, rigs were operated without retroreflective tape, and on the overwhelming majority of occasions, drivers recognized the presence of the rigs from their tail and side lights and the reflection of

---

[4] Plaintiffs attempt to distinguish *Utz* on various facts and procedural history differences, but they never discuss why the just-quoted statement is wrong. *Appellees' brief*, at 47. Plaintiffs also suggest that their experts' testing distinguishes *Utz*, but that testing only measured the reflectivity of the retroreflective tape and the time needed to perform backing and pulling-forward maneuvers. *Appellees' brief*, at 47, *citing R.R. 4:168-169, 228-229, 235-240* (tape), *197-198, 203-205* (maneuvers). Their testing did nothing to support the conclusion that, despite the rig's lights, better retroreflective tape was necessary to make the rig conspicuous to approaching drivers.

15

headlights against the rigs. Many other vehicles are operated without retroreflective tape today, and the lack of retroreflective tape does not make those vehicles effectively invisible at night.

As to the studies, Plaintiffs now call them "learned treatises." *Appellees' brief*, at 29. But Plaintiffs do not explain how the studies support Stopper's opinions. *See id.*

Nor do the studies support his opinions. Even assuming (without any record basis) that the studies considered only similar accidents, the studies contradict one another about whether the absence of retroreflective tape doubles the risk of a collision (and therefore satisfies the "more likely than not" burden of proof). *Appellant's brief*, at 27-29 (additional discussion). According to Stopper, one study found a 27 percent decrease with the use of the tape (a 1.37 relative risk) while the other found up to a 58 percent decrease (a 2.38 relative risk). *Id.* at 24, 27, *citing R.R. 4:213*. Stopper provided no basis for choosing one study over the other, leaving equal inferences about (and no basis to decide) which study is more correct. *See Appellant's brief*, at 28 (additional discussion), *citing Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010) (under equal-inference rule, "neither fact may be inferred").

And that was only one of multiple reasons why the studies do not support Stopper's conclusion. *See also Appellant's brief*, at 23-30 (additional reasons).

An expert's reliance on studies does not ensure the legal sufficiency of his opinions. As *Pollock* shows, a legal sufficiency challenge to an expert's reliance on studies must be sustained where, on the face of the record, the studies fail to support the expert's opinion. 284 S.W.3d at 819-820. That is the situation here.

Beyond the fleeting mentions of the regulations and the two studies, Plaintiffs say only that "the expert opinions were not bald assertions without explanation or support." *Appellees' brief*, at 32-33. Plaintiffs do not identify the supposed "explanation or support." Like the opinions themselves, Plaintiffs' defense of those opinions is conclusory.

Plaintiffs' brief also offers this opinion from their accident reconstructionist Lock: "And I don't care whether you have lights on or I don't care whether or not it doesn't. It's going to get hit because it creates a very hazardous situation." *R.R. 4:83, quoted in Appellees' brief*, at 22. This opinion too is conclusory. Lock offered no reason – not even a tangentially related study – to support his bald assertion of certainty.

***D. No other evidence shows that Westfreight's conduct created more than a condition necessary for the collision to occur.***

A defendant's negligence, resulting in a stopped or slowed vehicle or other obstruction in a roadway, may create a condition necessary for an accident to occur, but such negligence is not automatically the legal cause of the accident. *See, e.g., Bell*, 434 S.W.2d at 120-121 (citing additional cases). Drivers must anticipate slow-moving and stopped vehicles, for example, because they are "by no means an uncommon experience." *Erie*, 115 F. Supp. 2d at 495. Something more is required to raise the defendant's negligence to a "substantial factor" in an approaching driver's failure to recognize the condition.

If the negligence results in a concealed obstruction, the concealment may suffice to raise the defendant's negligence from a mere condition to a substantial factor in causing the accident. *See, e.g., Tex. Elec. Co-op. v. Dillard*, 171 S.W.3d 201, 208 (Tex. App. – Tyler 2005, no pet.) (unmarked carcass of dead cow on dark road). On the other hand, if the slow or stopped vehicle or other obstruction is visible to approaching traffic at a distance that allows a timely response, the negligence that caused the obstruction is not, as a matter of law, a legal cause of the accident. *See, e.g., Bell*, 434 S.W.2d at 120-121 (citing additional cases, overturned trailer on road); *City of Kemah*, 149 S.W.3d at 204 (patrol cars parked on road); *Fitzsimmons v.*

18

*Brake Check Inc.*, 832 S.W.2d 446, 449-450 (Tex. App. – Houston [14th Dist.] 1992, no writ) (lead vehicle rear-ended after slowing for loose wheel on roadway).

As discussed above and in Westfreight's opening brief, Plaintiffs cannot rely on the opinion testimony about Garza's purported inability to "connect the dots" formed by the rig's taillights and side lights. *See above*, at 14-17, *and Appellant's brief*, at 18-33.

Nor do Plaintiffs' contentions about "blindside backing" suffice. Although backing onto a highway presents risks "if there is traffic on that highway," *R.R. 5:187,* Business 281 was empty except for Garza's car, which was at least a minute away when the longer-than-one-minute backing process began. *See above*, at 11 (collecting testimony about duration of backing process). If Garza were traveling at the speed limit, which increased from 60 miles per hour to 70 miles per hour during the approach, *R.R. 4:80, 6:25*, she was at least one mile away when the backing process started. Westfreight's Rainsford Johnston did not see any traffic while he acted as spotter. *R.R. 5:73-76, 95, 100-101*. Although Plaintiffs emphasize Westfreight driver Jeffrey Bailey's testimony about an "extreme degree of risk" being possible to some "extent," that testimony pertained to a situation

19

("if there is traffic on that highway") that did not exist. *R.R. 5:187; see also Appellees' brief*, at 9, 35.[5]

A vehicle backing onto a roadway is not unforeseeable to an approaching driver. The Texas Transportation Code permits the backing of vehicles onto most roadways, including Business 281.[6] Even assuming that it is negligent to back a vehicle onto a roadway when forward egress is possible, trucks backing onto roadways is not unheard of on routes, like Business 281, that serve commercial and industrial areas.

But ultimately, "blindside backing" could not be a proximate cause because the backing process had completed, and the rig was moving forward. *See Appellant's brief*, at 14-18 (additional discussion). A slow-moving rig could be in a similar position on the roadway for reasons unrelated to "blindside backing," such as a lane change or the completion of

---

[5] Plaintiffs' excerpts of that testimony do not answer this question: An extreme degree of risk of *what*? *Appellees' brief*, at 9, 35.

[6] Section 545.415 of that Code states:

> Sec. 545.415. BACKING A VEHICLE. (a) An operator may not back the vehicle unless the movement can be made safely and without interference with other traffic.
>
> (b) An operator may not back the vehicle on a shoulder or roadway of a limited-access or controlled-access highway.

Business U.S. Highway 281 is not a "limited-access or controlled-access highway." *Compare* TEX. TRANSP. CODE §541.302(8) (defining those terms) *with above*, at 13 fn. 3 (diagrams and photographs of scene).

a turn from the adjacent intersection. *Id.* The causation issue does not turn on "blindside backing" but on Garza's failure to react to the rig's presence ahead of her.[7]

Plaintiffs also fault Johnston for not staying "at his post as the spotter until the Westfreight truck was in a safe position off to the shoulder" of the road. *Appellees' brief*, at 42. But Plaintiffs offered no evidence that Johnston would have prevented the collision from that position – even if Johnston were equipped with a reflective vest and a flashlight, as Plaintiffs claim he should have been. *See Appellees' brief*, at 42, 44-45.

A similar contention was rejected in *Texas & New Orleans Railroad Co. v. Compton*, 136 S.W.2d 1113 (Tex. 1940). In that case, the plaintiff asserted that a statutorily required warning sign would have prevented a collision of the deceased's vehicle with a train. *Id.* at 1115. The court agreed with opinions in earlier cases that, if a motorist "could not see the moving [train] cars ahead of him" and timely react, there was no reason to believe that a sign would have made any difference. *Id.*at 1115. The negligence in

---

[7] In describing "blindside backing," Plaintiffs' brief refers to a "ditch in the median separating the northbound and southbound lanes." *Appellees' brief*, at 7. Business 281 had a center turn lane but no median separating its northbound and southbound lanes, let alone a ditch in a median. *See, e.g., Pl. Exh. 62 (Appx. 27)* (aerial view of accident site); *see also above*, at 13 fn. 3 (additional diagrams and photographs of accident site).

not posting the sign was, as a matter of law, not a proximate cause of the collision. *Id.*

Garza did not react to a lighted tractor-trailer rig ahead of her, even though she had a clear, straight, and flat approach for at least 25 to 30 seconds at the speed limit. *Appellant's brief*, at 4-5 (discussing approach).[8] Given that she did not react to the rig's presence, there is no reason to believe that she would have reacted to the presence of a man standing next to the rig with a reflective vest and a flashlight.

Plaintiffs also argue that, because Johnston did not stay to "spot[] Garza oncoming in the right northbound lane, Bailey pulled the Westfreight truck further into that lane" and thereby caused the accident. *Appellees' brief*, at 43. At another point, Plaintiffs assert that it was "important for Bailey … to ensure that Janie Garza's lane of traffic was clear before he accelerated the Westfreight truck into that lane[.]" *Id.* at 13. These arguments make no sense when compared to the record. As Plaintiffs' accident reconstructionist Lock testified, and as his diagrams based on the physical evidence show, "the trailer was always in her lane." *R.R. 4:78; Pl.*

---

[8] Plaintiffs claim that "Garza tried to take evasive action," *Appellees' brief*, at 18, but that evasive action is not identified in either their brief or on the record page that they offer. *Id., citing R.R. 4:316.* The only possible "evasive action" might be a too-late decrease in speed as the collision occurred, *Appellees' brief*, at 18, but, as Lock testified, the evidence provides no way to estimate Garza's speed during her approach. *R.R. 4:117.*

*Exh. 242-243 (Appx. 29-30); see also above*, at 9-11 (additional discussion).

The rig did not suddenly pull into Garza's lane but had been there for about

a minute, if not more. *See above*, at 9-11. Not only do these arguments lack

any nonspeculative basis, they contradict the evidence.[9]

### E. Plaintiffs have not ruled out other plausible explanations, such as driver inattention, as the sole or superseding cause of the accident.

Westfreight's opening brief explained that, with at least 25 to 30

seconds of visible approach at the speed limit, Garza had plenty of time to

react to the rig's presence in the road. *Appellant's brief*, at 33-34. That brief

noted that driver inattention, driver distraction, and fatigue are commonly

known and appreciated causes of collisions into the rear of another vehicle.

*Id.* at 35. Westfreight noted the lack of any "basis for ruling out these

possible causes as the sole legal cause of the accident." *Id.* at 35-36.

Plaintiffs do not respond with any argument to rule out these other

causes.

Plaintiffs' statement of facts offers that "Garza was not speeding or on

her cellphone" at the time. *Appellees' brief*, at 18. Such a statement does not

---

[9] Plaintiffs also quote testimony of Westfreight's trucking safety expert Barry Brunstein and safety director Semeschuk that criticized the decision to back out of the yard. *Appellees' brief*, at 43, *quoting R.R. 5:204-205, 276.* But Plaintiffs quote the testimony out of context, erroneously leaving the impression that these witnesses were referring to a "start from a stopped position" on the roadway, as opposed to referring to a "stopped position" before backing onto the roadway. *R.R. 5:204-205; see also R.R. 5:276.* Nor does anything in the quoted testimony address the critical issue of proximate cause.

rule out distraction from other sources, let alone driver inattention and fatigue. Nor is the statement supported by the evidence. While there is no evidence that Garza was speeding, there is also no evidence that she was not speeding. As Lock explained, "there's no way to physically say in a scientific basis what her pre-crash travel speed was." *R.R. 4:117.* He could testify about Garza's speed only at the moment of impact. *Id.* Cell phone records showed only that Garza was not on a call and had neither just sent or received a text. *R.R. 4:37, 155-156; Pl. Exh. 268.* The records could not rule out other uses of Garza's cell phone, part of which was on her minivan's dashboard after the accident. *R.R. 4:342.*

Plaintiffs' "failure to explain or adequately disprove alternative theories of causation" makes their own theory "speculative and conclusory" and therefore legally insufficient to support a judgment. *Wal-Mart Stores Inc. v. Merrell*, 313 S.W.3d 837, 840 (Tex. 2010) (failure to rule out other possible causes of fire, evidence held legally insufficient).

### F. The foreseeability component is also absent.

While the parties' arguments focus on the cause-in-fact component of proximate cause, the foreseeability component is also a problem. The following principle applies to our case:

> In applying the test of foreseeability to situations where a negligently created pre-existing condition combines with a later act of negligence causing an injury, there is a distinction between a situation in which one has created a dangerous condition and a later actor observes, or by the circumstances should have observed, the existence of the dangerous condition and a situation in which the dangerous condition is not apparent and cannot be observed by the actor. In regard to the first situation, the intervening act interrupts the natural sequence of the events and cuts off the legal effect of the negligence of the initial actor. This is based upon the premise that it is not reasonable to foresee or expect that one who actually becomes cognizant of a dangerous condition in ample time to avert the injury will fail to do so.

*Wolf v. Friedman Steel Sales Inc.*, 717 S.W.2d 669, 673 (Tex. App. – Texarkana 1986, writ ref'd n.r.e.).

Rather than address this principle, Plaintiffs focus on the "obvious factual dissimilarities" of *Wolf. Appellees' brief*, at 39-40. Plaintiffs do not argue that the principle is inapplicable or wrong.

Plaintiffs quote conclusory testimony from Lock that it was "certainly a foreseeable hazard" to block the lanes. *Appellees' brief*, at 40, *quoting R.R. 4:81-82.* But Lock did not explain why it was reasonably foreseeable that a driver – who was at least a minute away when the backing process started and who had (at the speed limit) at least 25 to 30 seconds of clear, flat, straight approach – would nonetheless run into the back of a lighted rig. *See above*, at 9-12. Plaintiffs also cite Bailey's testimony that, "an extreme

degree of risk" may exist "if there is traffic on that highway[.]" *Appellees' brief*, at 40, *quoting R.R. 5:187-188.* But there was no traffic on the highway when Bailey began the backing process, *see above*, at 19-20, and none of his testimony establishes that it was foreseeable that a driver would fail to recognize the rig during the approach.

## II. Plaintiffs are not entitled to a new trial.

### A. *Plaintiffs' new trial complaint is moot because the evidence does not support Westfreight's liability.*

As discussed in Part I of this argument section, the evidence is legally insufficient to satisfy the proximate cause element of Plaintiffs' negligence claim against Westfreight. That legal insufficiency requires a reversal of the trial court's judgment and the rendering of a judgment that Plaintiffs take nothing. *Appellant's brief*, at 38; *see also* TEX. R. APP. P. 43.3.

Plaintiffs' cross-appeal challenges "the jury's apportionment of fault." *Appellees' brief*, at 48. But to justify an apportionment of fault question, the evidence must be legally sufficient to support Westfreight's liability. TEX. CIV. PRAC. & REM. CODE §33.003(b) (requiring "sufficient evidence to support the submission" of a party in an apportionment question).

Any challenge to the jury's answer to the apportionment question is moot because the challenge cannot affect the outcome, and any error premised on the jury's answer is harmless. *Compare Shupe v. Lingafelter*,

26

192 S.W.3d 577, 580 (Tex. 2006) (negligent entrustment instruction could not affect outcome because driver was not negligent).

### B. A new trial may not be granted for factual insufficiency of the evidence.

#### 1. Any factual insufficiency point is waived by inadequate briefing.

Plaintiffs argue that the evidence must be factually insufficient to support the jury's apportionment of responsibility because both sides challenged that apportionment in post-trial motions. *Appellees' brief*, at 23-24, 48. But the parties' challenges were different. Plaintiffs argued that the evidence was factually and legally insufficient to support a finding that Garza was 20 percent responsible. *C.R. 587.* Westfreight argued a contrary proposition: that the evidence was legally insufficient to support a finding that Garza was less than 51 percent responsible. *C.R. 594.*[10] In other words, Plaintiffs asserted that 20 percent was too much, and Westfreight asserted that 20 percent was far too little.

Plaintiffs offer no authority for the proposition that a new trial must be granted merely because each side raised a ***different*** sufficiency-of-the-evidence challenge to an apportionment question. An appellate brief requires

---

[10] Westfreight did not raise a factual sufficiency point and did not request a new trial. *C.R. 594.* By its complaint, Westfreight only sought a judgment notwithstanding the verdict. *Id.*

"appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). Plaintiffs only cite *Jackson v. Williams Brothers Construction Co.*, and they do so only for the principle that an apportionment finding must have support in the record. 364 S.W.3d 317, 325 (Tex. App. – Houston [1st Dist.] 2011, pet. den.), *cited in Appellees' brief*, at 48. An issue is waived where, as here, an appellant "cites only to a single non-controlling case." *Abdelnour v. Mid Natl. Holdings Inc.*, 190 S.W.3d 237, 241 (Tex. App. – Houston [1st Dist.] 2006, no pet.).

Nor have Plaintiffs adequately briefed any other basis for a factual insufficiency challenge. They make no argument to explain why the evidence is factually insufficient. *See Appellees' brief*, at 47-49 (new trial arguments).

"The law is clear that bare assertions of error, without argument or authority, waive error." *Teter v. Comm'n for Lawyer Discipline*, 261 S.W.3d 796, 799 (Tex. App. – Dallas 2008, no pet.); *see also* TEX. R. APP. P. 38.1(i). That rule applies to factual sufficiency complaints. *ERI Consulting Engineers Inc. v. Swinnea*, 318 S.W.3d 867, 880 (Tex. 2010).

Referring to factual sufficiency in the statement of issues and mentioning the factual sufficiency standard of review is not enough. *Garza v. Garza*, No. 4-11-310-CV, 2013 WL 749727, *3 (Tex. App. – San Antonio

28

Feb. 27, 2013, no pet.). But that is all Plaintiffs have done. *Appellees' brief*, at xi, 33-34. As a result, they have waived any factual sufficiency complaint.

### 2. The evidence is factually sufficient to support the jury's negligence and apportionment findings against Garza.

After an approach that provided at least 25 to 30 seconds of visibility at the speed limit, Garza drove her minivan into the rear of a tractor-trailer rig. *Appellant's brief*, at 3-5 (describing scene and collision). The rig was lit with more lights than federal regulations require, and nothing outside Garza's minivan obstructed her view during the clear, flat, and straight approach. *Id.; see also id.* at 18 (describing lights).

Factual sufficiency review requires a court to "consider and weigh all the evidence," and a court "should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). Assuming that the evidence were sufficient to support Westfreight's liability, the evidence is also factually sufficient to support a finding that Garza's negligence made her 20 percent responsible for the collision.

*C. A new trial may not be granted for improper witness coaching.*

**1. Plaintiffs did not preserve this issue in the trial court.**

Plaintiffs argue for a new trial "in the interests of justice" because Westfreight's counsel allegedly coached a witness. *Appellees' brief*, at 48.

Plaintiffs forfeited the issue by not immediately seeking relief during the trial. *R.R. 5:103-104* (no motion or objection). A complaint about a trial participant's misconduct requires a timely objection, so that the trial court has the opportunity to consider whether to address the misconduct with an instruction, a mistrial, or another appropriate remedy. *Alamo Carriage Serv. Inc. v. City of San Antonio*, 768 S.W.2d 937, 943 (Tex. App. – San Antonio 1989, no writ) (alleged jury misconduct, staff of party's counsel arranged for juror's taxi). "[I]t would be wantonly unfair to allow a litigant to take his chances with the jury and later complain of misconduct when he is unhappy with the result." *Id.*

Even assuming that the issue were still viable, Plaintiffs did not preserve the issue in their motion for new trial. *C.R. 576-582.*

Because the interests of justice "is never an independently sufficient reason for granting a new trial," a trial court must give a more specific reason for doing so. *In re United Scaffolding Inc.*, 377 S.W.3d 685, 689-690 (Tex. 2012). To allow a trial court to satisfy that requirement, a motion for

new trial must give each specific reason why a new trial is sought in the interests of justice. Otherwise, an appellant cannot show that the reason argued on appeal was argued to the trial court. TEX. R. APP. P. 33.1(a). Moreover, the rules for new trial motions require grounds that "can be clearly identified and understood" and that are not merely "couched in general terms." TEX. R. CIV. P. 321, 322.

Because Plaintiffs' motion for new trial did not raise the issue of witness coaching, they have not preserved the issue for appeal. TEX. R. APP. P. 33.1(a).

### 2. Plaintiffs' inadequate briefing waived the issue.

As discussed above, at 27-29, a complaint is waived when an appellant fails to cite appropriate authority to support the complaint. Plaintiffs cite no authority to support their contention that witness coaching requires a new trial, let alone on a record similar to ours. *Appellees' brief*, at 48. Plaintiffs only cite an opinion for the proposition that appellate courts once had broad discretion to grant new trials in the interests of justice. *Id.; but see In re Toyota Motor Sales U.S.A. Inc.*, 407 S.W.3d 746, 758-759 (Tex. 2013) (grants of new trials are subject to "merits-based review"). That tangential citation does not satisfy Plaintiffs' burden of providing "appropriate citations to authorities" and results in waiver of the issue. TEX.

31

R. APP. P. 38.1(i); *see also above*, at 27-29 (additional briefing-waiver discussion).

### 3. The record does not show that any impropriety occurred.

Plaintiffs allege that Westfreight's trial counsel Christopher Lowrance coached Johnston to deny that his conduct created an "extreme risk" for motorists. *Appellees' brief*, at 48. Johnston testified that he did not perceive "an extreme risk of a collision or an accident" from backing the rig onto Business 281. *R.R. 5:75*. He also testified that he did not believe that his and Bailey's conduct put "any motorist who might be in that road at an extreme risk … ." *R.R. 5:100.*

Johnston spoke with Lowrance during a break, and Plaintiffs' counsel asked Johnston about the conversation. *R.R. 5:102-103.* According to Johnston, Lowrance said that he would ask a question about putting motorists in extreme risk and that Johnston "should say" that he did not do so. *R.R. 5:103.*

Plaintiffs' counsel did not ask any more questions. *R.R. 5:103-104.* Critically absent is any question about whether the alleged coaching affected Johnston's answer. Nothing in the record shows that Johnston's answer was anything but his honest opinion.

Plaintiffs' complaint about witness coaching is without merit. There is no evidence of any impropriety.

### 4. Even assuming that improper coaching occurred, Plaintiffs have not shown that the trial court abused its discretion by denying a new trial.

A trial court does not abuse its discretion by denying a motion for new trial when newly discovered evidence is "cumulative," used for "purposes of impeachment," or not "so material it would probably produce a different result if a new trial were granted." *Watts v. Watts*, 396 S.W.3d 19, 23 (Tex. App. – San Antonio 2012, no pet.) (quot. omitted). Although our situation differs, in that the alleged witness coaching was discussed during the trial, these principles are no less applicable.

Plaintiffs cite multiple witnesses' testimony about the dangers of "blindside backing." *Appellees' brief*, at 6-17. Even assuming that Johnston were to give a different answer to the "extreme risk" question, that answer would be merely cumulative. The trial court did not abuse its discretion by refusing to grant a new trial on the possibility that a jury may hear different, but nonetheless cumulative, testimony from Johnston. *Watts*, at 23-24 (no abuse of discretion, new evidence was cumulative).

A trial court could also reasonably infer that Plaintiffs' purpose in putting the coaching before the jury was impeachment. *R.R. 5:102-104.*

33

Plaintiffs' counsel asked Johnston about the witness coaching but not about whether he gave an untrue answer. *Id.* Plaintiffs, who presented two expert witnesses (Lock and Stopper) on liability issues, were not relying on Johnston's opinions about risk to establish their case. The denial of a new trial under these circumstances is not an abuse of discretion. *See, e.g., Ski River Development Inc. v. McCalla*, 167 S.W.3d 121, 132 (Tex. App. – Waco 2005, pet. den.) (no abuse of discretion, impeachment was apparent purpose for presenting evidence that attorney asked witness "to forget some things").

Plaintiffs also have not shown that Johnston's opinion about "extreme risk" was "so material that it would probably produce a different result in a new trial." *Watts*, at 23. While classification of a risk as "extreme" may matter where a charge asks about gross negligence (which requires an "extreme" risk), TEX. CIV. PRAC. & REM. CODE §41.001(11)(A), nothing in this case's charge required such a classification. *C.R. 555, 557-558.* Moreover, given the totality of the evidence received, the effect of one opinion from Johnston is merely speculative in a situation where "probably" is the standard. *Watts*, at 23; *see also* TEX. R. APP. P. 44.1(a).

Even assuming that improper witness coaching occurred, and that Plaintiffs preserved their complaint, Plaintiffs have failed to show an entitlement to a new trial.

## CONCLUSION AND PRAYER FOR RELIEF

The evidence is legally insufficient to show that Westfreight's conduct was a proximate cause of the collision. The evidence does no more than show that Westfreight's conduct, which placed a slow-moving rig onto Business 281, did more than merely furnish a condition that made a collision possible. *See above*, at 2-26, *and Appellant's brief*, at 10-38.

The trial court erred by overruling Westfreight's objection to the jury charge and again by denying Westfreight's motion for judgment notwithstanding the verdict, each of which raised the lack of evidence to support a finding of proximate causation. *Appellant's brief*, at 38.

Westfreight asks the Court for the relief that Westfreight requested in its opening brief. Westfreight also asks that the Court deny the relief that Plaintiffs request by their cross-appeal.

Respectfully submitted,

/s/ Brian Miller
Brian Miller (lead)
State Bar No. 24002607

Christopher Lowrance
State Bar No. 00784502

ROYSTON RAYZOR
VICKERY & WILLIAMS L.L.P.
Frost Bank Plaza, Suite 1300
802 N. Carancahua St.
Corpus Christi, TX  78401
Tel. No. (361) 884-8808
Fax No. (361) 884-7261
E-mail:
brian.miller@roystonlaw.com,
chris.lowrance@roystonlaw.com

*Attorneys for appellant*
*Westfreight Systems Inc.*

# CERTIFICATE OF SERVICE

A true copy of this document was served using the electronic filing and service system (for service on registered users) and as shown below on January 9, 2015.

*Via e-mail to*
*jgsanger@edwardsfirm.com*
John Blaise Gsanger
THE EDWARDS LAW FIRM
802 N. Carancahua St., Suite 1400
Corpus Christi, TX 78401

*Lead appellate counsel for Plaintiffs*

*Via e-mail to*
*khood@fabregahood.com*
Kevin L. Hood
FABREGA HOOD L.L.P.
1800 St. James Pl., Suite 304
Houston, TX 77056

*Counsel for additional trial court defendant National Oilwell Varco L.P.*

*Via e-mail to dbright@swhhb.com*
David Bright
SICO WHITE HOELSCHER
HARRIS & BRAUGH L.L.P.
802 N. Carancahua St., Suite 900
Corpus Christi, TX 78401

*Additional appellate counsel for Plaintiffs*

*Via e-mail to crkeener@aol.com*
Craig R. Keener
CRAIG R. KEENER P.C.
1005 Heights Blvd.
Houston, TX 77092

*Counsel for additional trial court defendant National Oilwell Varco L.P.*

/s/ Brian Miller
Brian Miller

# CERTIFICATE OF WORD-COUNT COMPLIANCE

I certify that this document complies with Rule of Appellate Procedure 9.4. Excluding the portions listed in Rule 9.4(i)(1), and according to the word count of the computer program used, this document contains 7,434 words.

/s/ Brian Miller
Brian Miller